JUDGE CARTER

Theodore C. Max (TM 1742)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, New York 10112-0015
(212) 653-8700
(212) 655-1712 (facsimile)
TMax@sheppardmullin.com

**11 CIV 9436**

Robert E. Shapiro (application for *pro hac vice* admission to be filed)
Wendi E. Sloane (application for *pro hac vice* admission to be filed)
Vito S. Solitro (application for *pro hac vice* admission to be filed)
BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP
200 W. Madison Street, Suite 3900
Chicago, Illinois 60606
(312) 984-3100
(312) 984-3150 (facsimile)
rob.shapiro@bfkn.com
wendi.sloane@bfkn.com
vito.solitro@bfkn.com

DEC 22 2011
U.S.D.C. S.D. N.Y.
CASHIERS

*Attorneys for Plaintiff Louis Vuitton Malletier, S.A.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOUIS VUITTON MALLETIER, S.A., a French Société Anonyme, <br><br>                Plaintiff, <br><br>     vs. <br><br> WARNER BROS. ENTERTAINMENT INC., a Delaware corporation, <br><br>             Defendant. | Civ. Action No. _____ <br><br><br> **COMPLAINT** |

Plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton"), by and through its attorneys, for its Complaint against Defendant Warner Bros. Entertainment Inc. ("Warner Bros.") for violation of the Lanham Act and New York statutory and common law, alleges and states as follows:

738568

1

## NATURE OF THE DISPUTE

1.       These claims arise out of Warner Bros.' misuse, in its motion picture *The Hangover: Part II,* of luggage infringing Louis Vuitton's famous trademarks that Warner Bros. expressly misrepresents to the public as a genuine product of Louis Vuitton.  The famous 100 year old Toile Monogram is one of Louis Vuitton's most important trademarks, and one that it vigorously protects.  To that end, Louis Vuitton is pursuing a well-publicized enforcement action in the United States International Trade Commission, *In the Matter of Certain Handbags, Luggage, Accessories and Packaging Thereof,* Investigation No. 337-TA-754 (the "ITC Action"), against seventeen respondents in the United States and China, including the manufacturers and distributors of the infringing luggage that Warner Bros. falsely represents as bearing authentic Louis Vuitton trademarks and being a genuine Louis Vuitton product.

2.       The respondents of the ITC Action have been involved in an elaborate scheme to manufacture, import, and sell counterfeit and infringing handbags, accessories and packaging, including handbags and luggage that infringe the Toile Monogram.  Among the infringing products targeted by the ITC Action are handbags and luggage from the Diophy group of companies.  These products bear a knock-off design of Louis Vuitton's Toile Monogram.  Louis Vuitton is seeking a general exclusion order in the ITC Action to prevent the importation of the infringing products, including those of Diophy group.

3.       The Diophy products that are the subject of the ITC Action infringe Louis Vuitton's famous Toile Monogram trademark. But, in its recent hit movie, *The Hangover: Part II,* Warner Bros. prominently features an infringing travel bag from the Diophy group of companies (the "Diophy Bag") and misrepresents that the Diophy Bag is a genuine Louis

Vuitton piece of luggage. In so doing, Warner Bros. is explicitly misleading the public about the source of the Diophy Bag.

4.     Warner Bros.' use and misrepresentation of the Diophy Bag as an authentic Louis Vuitton bag in *The Hangover: Part II* create a likelihood that the public will be confused that Louis Vuitton is the source of, or has sponsored or approved of, the Diophy Bag and Warner Bros.' use of it as a "Louis Vuitton" in the film. It also undermines Louis Vuitton's enforcement efforts to eradicate from the United States market and globally the infringing products that are the subject of the ITC Action and to combat the consumer confusion and trademark dilution resulting from the Diophy group's infringing activities.

5.     Warner Bros.' use and misrepresentation of the infringing Diophy Bag as an authentic Louis Vuitton bag constitute false designation of origin in violation of Section 43(a) of the Lanham Act, common law unfair competition and trademark dilution under New York state law. Warner Bros.' use and its misrepresentation of the Diophy Bag as a genuine Louis Vuitton product are knowing and intentional.

6.     Louis Vuitton explicitly put Warner Bros. on notice that the Diophy Bag infringed its marks and that Louis Vuitton objected to the misrepresentation of the Diophy Bag as a genuine Louis Vuitton product in *The Hangover: Part II*. Nevertheless, Warner Bros. did not modify the portion of the film that uses and misrepresents the infringing Diophy Bag as an authentic Louis Vuitton bag. Warner Bros.' misconduct continued when it recently released the film on DVD with the offending scene intact.

7.     Louis Vuitton seeks to permanently restrain and enjoin Warner Bros. from distributing *The Hangover: Part II* as long as it contains the portion of the film that uses and misrepresents the infringing Diophy Bag as an authentic Louis Vuitton bag. Louis Vuitton also

seeks monetary damages resulting from Warner Bros.' false designation of origin, unfair competition and state trademark dilution. Because Warner Bros.' misconduct is knowing and intentional, Louis Vuitton is also entitled to treble damages, punitive damages, costs, and attorneys' fees.

## PARTIES

8.     Plaintiff Louis Vuitton Malletier, S.A. is a French Société Anonyme with its principal place of business located at 2 Rue du Pont Neuf 75001, Paris, France.

9.     On information and belief, Defendant Warner Bros. is a Delaware corporation with its principal place of business at 4000 Warner Boulevard, Burbank, California 91522. Warner Bros. has been and is doing business in this District, advertising, promoting and distributing its movies and television shows.

## JURISDICTION

10.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 with respect to the claims arising out of federal law. This Court also has original jurisdiction pursuant to 28 U.S.C. § 1338(a) with respect to Louis Vuitton's claim under 15 U.S.C. §1125(a), which arises under the federal trademark laws. In addition, the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to the claims arising under state law, which are so related to the federal claims brought herein as to form part of the same case or controversy.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the acts giving rise to the claims occurred in this jurisdiction.

## FACTUAL BACKGROUND

**A.    Louis Vuitton And The Worldwide
Recognition Of The LVM Marks.**

12.    Founded in Paris in 1854, Louis Vuitton has been at its core a luxury travel company.  Since then, Louis Vuitton has become one of the premier luxury fashion houses in the world.  Today, Louis Vuitton is renowned for its high-quality luggage, trunks, handbags, purses, wallets, fashion accessories, and a variety of other luxury products.

13.    Louis Vuitton closely controls the production, sale, and distribution of its products.  Its leather goods are produced solely in France, Italy, Spain, and the United States.  Louis Vuitton sells its products in the United States and worldwide exclusively only in company owned and operated boutiques and online through www.louisvuitton.com.  The company is committed to the premiere quality of its products.

14.    Louis Vuitton's principal trademark, the highly-distinctive and famous Toile Monogram, dates from the 1890's.  It comprises a repeating diagonal pattern of interlocking company initials and geometrical shapes, in yellow, displayed on a chestnut-brown background.  Registered in 1932 on the Principal Register of the United States Patent and Trademark Office, this trademark is famous, distinctive, and incontestable.  Similarly, its equally recognizable "LV" company initials mark—and also an integral part of the Toile Monogram—has been used since the 1890's to identify Louis Vuitton.  These marks, along with the other source-identifying elements comprising the Toile Monogram such as the Flowers marks (collectively, the "LVM Marks"), appear below:

    

15.    For more than a century, Louis Vuitton has continuously used its LVM Marks in connection with a wide variety of high-quality products, including, but not limited to, luggage, trunks, handbags, purses, wallets, fashion accessories, and a variety of other luxury products.

16.    Louis Vuitton is the owner of a number of United States trademark registrations for the LVM Marks for a wide variety of goods, copies of which are attached hereto as **Exhibit A.**    These registrations include Nos. 297,594; 1,770,131; 2,399,161; 2,181,753; 2,177,828; 2,773,107; 2,361,695; 2,291,907; 1,938,808; 1,794,905 and 1,519,828.

17.    Louis Vuitton's registrations set forth above are in full force and effect, and all have become incontestable.

18.    LVM Marks are strong and unique, inherently distinctive, and protectable without proof of secondary meaning.  Not only are the LVM Marks strong marks, but they are famous and distinctive, as several courts have expressly found.

19.    Louis Vuitton has invested millions of dollars and decades of time and effort to create consumer recognition of the LVM Marks and to ensure that the public, not only in the United States but throughout the world, associates the LVM Marks with high-quality, luxury goods emanating exclusively from Louis Vuitton.

20.    As a result of the wide renown acquired by the LVM Marks, Louis Vuitton's worldwide reputation for high-quality and luxury goods, and the wide geographic distribution and extensive sale of various products distributed under the LVM Marks, the LVM Marks have

acquired secondary meaning, fame and significance in the minds of the purchasing public. The purchasing public immediately identifies the products offered under the LVM Marks with a single source. Therefore, the LVM Marks, and the goodwill associated therewith, are of inestimable value to Louis Vuitton.

21.    To reinforce the fame, recognition, and reputation that the LVM Marks have attained for the Louis Vuitton brand, Louis Vuitton continues to spend millions of dollars every year advertising its products.

22.    On occasion, Louis Vuitton also partners with celebrities and production studios, but only to enhance consumer recognition of the LVM Marks and the exclusivity and prestige of the Louis Vuitton brand. Louis Vuitton meticulously selects the actors and films with which it chooses to associate its invaluable brand. For example, global icons like Angelina Jolie, Sean Connery, Mikhail Gorbachev, and Bono have been at the forefront of Louis Vuitton's Core Values advertising campaign. Louis Vuitton has also permitted its products to be used in films such as New Line Cinema's 2008 movie *Sex and the City.*

23.    As the owner of the LVM Marks, Louis Vuitton has the absolute right to manage and control its trademarks as they appear in any marketing endeavors, including the people and films it selects to promote the exceptional luxury and exclusivity of the Louis Vuitton brand. Louis Vuitton does not allow its products to be advertised or sold by any third party through either unauthorized media channels or unauthorized channels of distribution.

**B.     The Diophy Infringing Bags.**

24.    To protect its valuable LVM Marks, Louis Vuitton actively enforces its rights against infringers and counterfeiters. Among its prominent enforcement actions is the ITC Action filed on December 3, 2010, in which Louis Vuitton brought claims against seventeen respondents under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 337 ("Section

337"). The ITC Action includes products from the Diophy group, which use a monogram design that is a knock-off of the famous Toile Monogram (the "Knock-Off Monogram Design"). The relief Louis Vuitton seeks in the ITC Action includes a general exclusion order to permanently exclude importation of the infringing and counterfeit products, including products bearing the Knock-Off Monogram Design such as the Diophy Bag.

25.    The Knock-Off Monogram Design of the Diophy Bag is confusingly similar to the LVM Marks. Below are photographs showing authentic Louis Vuitton products bearing the LVM marks and the Diophy products bearing the infringing Knock-Off Monogram Design:

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**



Louis Vuitton                              Diophy

26.     As evidenced above, the Knock-Off Monogram Design consists of a diagonal pattern of interlocking initials and geometrical shapes in repeated fashion, at regularly spaced intervals, in the Louis Vuitton yellow and chestnut color scheme.  The Knock-Off Monogram Design of the Diophy products does not contain the famous LV mark, a fact apparent on inspection.

27.     The Diophy products bearing the Knock-Off Monogram Design have been extensively distributed throughout the United States, causing enormous harm to Louis Vuitton. Not only do they infringe and dilute the famous LVM Marks, they are manufactured in China and are of inferior quality to authentic Louis Vuitton's products bearing the LVM marks. Unfortunately, the demand for the Diophy products bearing the Knock-Off Monogram Design has been high because they are far less expensive than genuine Louis Vuitton products.   The Diophy Bag and its Knock-Off Monogram Design have thus posed a grave threat to Louis Vuitton's intellectual property and the goodwill associated therewith – the very reason for the ITC Action.

**C.     Warner Bros.' Unlawful Use Of The LVM Marks.**

28.     Warner Bros. is a producer of motion pictures and television shows.

29.     A giant in the entertainment industry, Warner Bros. distributes its motion pictures and television shows to millions of viewers around the world.

30.     One of Warner Bros.' latest pictures is *The Hangover: Part II*, released in theatres on May 26, 2011 in the United States and around the world.

31.     Like many of Warner Bros.' pictures, *The Hangover: Part II* has been seen by millions of viewers around the world.   As evidence of the film's immense audience, *The Hangover: Part II* has grossed roughly $580 million globally as of the date of this Complaint,

becoming the highest-grossing R-rated comedy of all time and one of the highest grossing movies in 2011.

32.    *The Hangover: Part II* is a comedy featuring four characters ("Phil," "Stu," "Doug," and "Alan") who travel to Thailand for a bachelor party and wedding. The movie features the same four characters from the original *Hangover* movie, the story of a bachelor party bender in Las Vegas.

33.    In the beginning of *The Hangover: Part II*, the film prominently features the LVM Marks in an airport scene in Los Angeles with the film's four main characters. First, the four main characters are walking through an airport. In the background of this scene, a porter is pushing what appear to be Louis Vuitton trunks, some hard-sided luggage, and two Keepall travel bags on a dolly. The Keepall is an iconic series of carry-on size bags produced and distributed by Louis Vuitton, bearing the LVM Marks. In the foreground, the character "Alan," played by Zach Galifiankis, is carrying a Keepall-styled bag, but it is a Diophy Bag rather than an authentic Louis Vuitton Keepall bag. True and correct copies of still images from this scene are attached hereto as **Exhibit B.**

34.    Second, while still in the airport, seconds after this initial walk-through scene, "Alan" sits on a bench in the airport lounge and places the infringing Diophy Bag on the empty seat next to him. The camera is fixed on "Alan" and the infringing Diophy Bag next to him. "Stu" moves the Diophy Bag so that "Teddy", another character, can sit down in the chair next to "Alan". Then, "Alan" warns, ***"Careful that is...that is a Louis Vuitton."*** True and correct copies of still images from this scene are attached hereto as **Exhibit C.**

35.    By using the infringing Diophy Bag and affirmatively misrepresenting that it is a Louis Vuitton bag, the public is likely to be confused into believing that the Diophy Bag is an

authentic Louis Vuitton product and that Louis Vuitton has sponsored and approved Warner Bros.' use and misrepresentation of the infringing Diophy Bag as a genuine product of Louis Vuitton in *The Hangover: Part II*.

36.    Louis Vuitton did not consent to Warner Bros.' use of any products bearing the LVM Marks, any products bearing the Knock-Off Monogram Design, or its misrepresentation that the infringing Diophy Bag is a genuine Louis Vuitton product in *The Hangover: Part II*. Warner Bros. was well aware it had no right, license, or authority to affirmatively misrepresent to the public and millions of moviegoers that the infringing Diophy Bag used in *The Hangover: Part II* is an authentic Louis Vuitton product.

37.    Warner Bros. has constructive knowledge and, on information and belief, actual knowledge, that the Diophy Bag is an infringing product, not originating from Louis Vuitton. It is evident upon inspection that the Knock-Off Monogram Design is confusingly similar to the LVM Marks, and not in fact the famous Toile Monogram.  On December 3, 2010, months before the film's release, Louis Vuitton filed the ITC Action, generating extensive publicity.  Moreover, in June 2011, Warner Bros. received a subpoena in the ITC Action relating to the use of the Diophy Bag in the movie.

38.    By way of letter dated July 29, 2011, Louis Vuitton notified Warner Bros. that it objected to the use and misrepresentation in the film of the infringing Diophy Bag as a genuine Louis Vuitton product.  A true and correct copy of this letter is attached hereto as **Exhibit D**.

39.    In this letter, in-house counsel for Louis Vuitton specifically stated that the Diophy Bag is the subject of the ITC Action and not a Louis Vuitton product and enclosed a still image of the Diophy Bag from the movie.  Upon inspection of the still image, anybody with

elementary knowledge of the LVM Marks could tell that the Diophy Bag is not a Louis Vuitton product.

40.     Nevertheless, Warner Bros. has refused to acknowledge or concede the undeniable fact that the bag used in *The Hangover: Part II* by "Alan" is a Diophy Bag bearing the Knock-Off Monogram Design and not an authentic product of Louis Vuitton.

41.     Despite being informed of Louis Vuitton's objection to Warner Bros.' use of the infringing Diophy Bag and its false representation that the bag is authentic, on December 6, 2011, Warner Bros. released *The Hangover: Part II* in the United States on DVD and Blu-Ray Disc. This release occurred more than four months after Louis Vuitton first voiced its formal objection, put Warner Bros. on notice, and requested Warner Bros. make changes to deal with Louis Vuitton's objections and concerns.

42.     Louis Vuitton has suffered significant harm as a result of Warner Bros.' misrepresentation that the infringing Diophy Bag originated with Louis Vuitton. The public is likely to be confused that Diophy Bag bearing the Knock-Off Monogram Design is an authentic product of Louis Vuitton and that Louis Vuitton authorized Warner Bros. to misrepresent that Louis Vuitton is the source of the Diophy Bag. It goes without saying that when Louis Vuitton authorizes product placement in motion pictures, genuine Louis Vuitton products are used and only with the express permission of Louis Vuitton.

43.     On information and belief, it is custom and practice in the film industry that, when branded products are to be used in a movie, a motion picture studio requests and the brand owner provides express consent with respect to the use of its branded products in the movie. Moviegoers and consumers who purchase and/or view recorded versions of the movie thus are likely to presume that branded products shown in a movie are authentic. Moviegoers are also

likely to presume that the brand owner has given permission for the use of its product or even affirmatively sponsored and endorsed such use.

44.    The harm to Louis Vuitton has been exacerbated by the prominent use of the aforementioned scenes and the LVM Marks in commercials and advertisements for the film. The "Alan" character's line regarding the Diophy Bag – "careful that is a Louis Vuitton" – has thus become an oft-repeated and hallmark quote from the movie.

45.    Not surprisingly, the public, including Louis Vuitton customers and potential consumers, have been misled into believing that the Diophy Bag is a genuine Louis Vuitton bag. This actual confusion is well documented on the Internet and on various blogs, which have buzzed with discussions regarding the "Louis Vuitton bag" used by "Alan," thereby perpetuating such actual confusion.  Representative Internet references and blog excerpts are attached hereto as **Exhibit E.**

46.    Warner Bros.' use and misrepresentation of the Diophy Bag bearing the Knock-Off Monogram Design as an authentic Louis Vuitton bag is likely to blur the distinctiveness of the LVM Marks.  As a substantially similar imitation, the Knock-Off Monogram Design is likely to harm the ability of the LVM Marks to serve as an identifier of source for Louis Vuitton products.

47.    Warner Bros.' use and misrepresentation of the Diophy Bag as an authentic Louis Vuitton bag is also likely to tarnish the LVM Marks by associating Louis Vuitton with the poor quality and shoddy reputation of the cheap products bearing the Knock-Off Monogram Design.

**D.    Warner Bros.' Willful Use Of The LVM Marks.**

48.    Well after being notified that Louis Vuitton objected to its use and misrepresentation of the infringing Diophy Bag as a genuine Louis Vuitton product, Warner Bros. nonetheless proceeded with its planned release of *The Hangover: Part II* on DVD without

14

eliminating its use of the portion of the film that uses and misrepresents the infringing Diophy Bag as an authentic Louis Vuitton bag or otherwise addressing Louis Vuitton's concerns. As such, Warner Bros. is thereby perpetuating to potentially millions of DVD viewers the misrepresentation and confusion that Louis Vuitton is the source of the infringing Diophy Bag.

49.     On information and belief, having received Louis Vuitton's objection in July of 2011, Warner Bros. could have digitally modified the scene in question to address Louis Vuitton's objections.   Warner Bros. previously admitted, in its own court filing in another lawsuit brought against it involving the violation of intellectual property in *The Hangover: Part II*, that such a digital alteration would be feasible.  In *Whitmill v. Warner Bros. Entertainment, Inc.,* 11-CV-752 (E.D. Mo. 2011), the owner of a registered copyright to the tattoo, created on former heavyweight champion boxer Mike Tyson's face sued Warner Bros. because the "Stu" character received a replica tattoo in the movie.  In its Memorandum in Opposition to Plaintiff's Proposed Scheduling Plan filed in the *Whitmill* case, Warner Bros. admitted that if the case did not settle, it would digitally alter the tattoo in the DVD version of the movie to not infringe on Plaintiff's copyright. *Whitmill, supra,* 11-CV-752, ECF No. 51.  If Warner Bros. is able to digitally alter a tattoo that was on a character's face for a significant portion of the movie, surely it could have digitally altered the single scene misusing the LVM Marks.

## COUNT I
## False Designation of Origin/Unfair Competition (15 U.S.C. § 1125(a)(1)(A))

50.     Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 49, above.

51.     For over 100 years, Louis Vuitton has used the LVM Marks as identifiers of source.  As a result of the tremendous secondary meaning Louis Vuitton has created, the LVM Marks are strong, famous, and distinctive marks entitled to the broadest scope of protection.

52.    Warner Bros.' unauthorized use and misrepresentation of the Diophy Bag bearing the Knock-Off Monogram Design as an authentic product of Louis Vuitton in *The Hangover: Part II* constitutes a use in commerce of a false designation of origin and is likely to cause confusion, or to cause mistake, or to deceive the public that Louis Vuitton sponsored the use of, or provided the Diophy Bag to Warner Bros., or licensed, or otherwise sponsored or approved Warner Bros.' misrepresentation that the infringing Diophy Bag is a product of Louis Vuitton.

53.    Warner Bros.' actions constitute false designation of origin and unfair competition under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

54.    Louis Vuitton has no adequate remedy at law.    Unless Warner Bros. is permanently enjoined from using that portion of the film that uses and misrepresents the infringing Diophy Bag as an authentic Louis Vuitton bag, Louis Vuitton will be irreparably injured because of its loss of goodwill, prestige and reputation stemming from Warner Bros.' use and misrepresentation of the infringing Diophy Bag as a genuine Louis Vuitton product.

55.    Warner Bros.' use and misrepresentation of the infringing Diophy Bag as a genuine Louis Vuitton product was knowing and intentional.

## COUNT II
## Common Law Unfair Competition

56.    Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 49, above.

57.    Louis Vuitton has common law rights in the United States and in the state of New York to use the LVM Marks in connection with the purposes stated on the Principal Register.

58.    For over 100 years, Louis Vuitton has used the LVM Marks as identifiers of source.  The LVM Marks are strong, famous, and distinctive marks entitled to the broadest scope of protection.

59.     Warner Bros.' use and misrepresentation of the Diophy Bag bearing the Knock-Off Monogram, which is confusingly similar to the LVM Marks, as a Louis Vuitton product constitutes unfair competition under New York common law.

60.     Warner Bros. has engaged in the foregoing act of unfair competition with bad faith.

61.     Louis Vuitton has no adequate remedy at law.   Unless Warner Bros. is permanently enjoined from using that portion of the film that uses and misrepresents the infringing Diophy Bag as an authentic Louis Vuitton bag, Louis Vuitton will be irreparably injured because of its loss of goodwill, prestige, and reputation stemming from Warner Bros.' use and misrepresentation of the infringing Diophy Bag as an authentic Louis Vuitton product.

## COUNT III
## Trademark Dilution Under New York Law (N.Y.G.B.L. § 360-*l*)

62.     Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 49, above.

63.     The LVM Marks have achieved great renown throughout New York, within the meaning of New York General Business Law § 360-*l*.  As a result of use over many decades, extensive advertising and promotion, and widespread sales of products bearing the LVM Marks, the LVM Marks have become uniquely and exclusively associated in New York and elsewhere with Louis Vuitton and its products.

64.     Warner Bros., as a result its use and misrepresentation of the infringing Diophy Bag as a genuine Louis Vuitton design in *The Hangover: Part II*, is and has been engaged in the use of marks similar to the LVM Marks in commerce.  Warner Bros.' unauthorized use of marks similar to LVM Marks in *The Hangover: Part II* commenced after the LVM Marks were federally registered and had become famous and distinctive in New York.

17

65.     The Knock-Off Monogram Design used on the Diophy Bag is substantially similar to the LVM Marks, and are used on products identical to those on which Louis Vuitton uses its LVM Marks.

66.     On information and belief, in using the Diophy Bag, Warner Bros.' acted in bad faith and intended that moviegoers believe that the Diophy Bag bearing the Knock-Off Monogram Design originated from and is a genuine product of Louis Vuitton. Moviegoers may not be sufficiently sophisticated to recognize that the Diophy Bag is not an authentic product of Louis Vuitton, and have come to believe that the Diophy Bag bearing the Knock-Off Monogram Design originated from and is a genuine product of Louis Vuitton.

67.     Warner Bros.' wrongful actions are likely to cause dilution by blurring and tarnishing the marks. Moreover, Warner Bros.' activities have caused, and unless enjoined will continue to cause disparagement, damage to Louis Vuitton's business reputation, and lessening of the distinctiveness of the LVM Marks. Such conduct violates New York General Business Law § 360-*l*.

68.     Louis Vuitton has no adequate remedy at law. Unless Warner Bros. is permanently enjoined from using that portion of the film that uses and misrepresents the infringing Diophy Bag as an authentic Louis Vuitton bag, Louis Vuitton will be irreparably injured because of its loss of the distinctiveness of the LVM Marks stemming from Warner Bros.' use and misrepresentation of the infringing Diophy Bag as an authentic Louis Vuitton product.

69.     Warner Bros.' misconduct was knowing, intentional and in bad faith.

**WHEREFORE** Louis Vuitton prays that this Court enter judgment for Louis Vuitton and against Warner Bros.:

A. Finding that Warner Bros.' use and misrepresentation of the Diophy Bag bearing the infringing Knock-Off Monogram as an authentic Louis Vuitton product in *The Hangover: Part II*:

    (1) constitutes false designation of origin in violation of Section 43(a) of the Lanham Act;

    (2) constitutes unfair competition under New York law;

    (3) constitutes dilution under New York General Business Law § 360-l; and

    (4) was knowing, intentional and/or in bad faith.

B. Permanently enjoining Warner Bros., and all of its officers, agents, servants, employees, related entities, and their attorneys, and all persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, from:

    (1) advertising, marketing, promoting or distributing *The Hangover: Part II* in any format or media containing any scenes that use and/or misrepresent the infringing Diophy Bag, or any other product infringing the LVM marks, as an authentic Louis Vuitton bag;

    (2) advertising, marketing, promoting or distributing *The Hangover: Part II* in any format or media containing any scenes misrepresenting, or likely to cause members of the public to be confused that Louis Vuitton authorized Warner Bros. to misrepresent, that the Diophy Bag is an authentic Louis Vuitton product;

    (3) engaging in any other activity constituting unfair competition with Louis Vuitton, or misusing the LVM Marks; and

    (4) instructing, assisting, aiding or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs (1)-(3) above;

C. Ordering Warner Bros. to:

    (1) deliver up to counsel for Louis Vuitton for destruction all copies of *The Hangover: Part II* in any format or media, and all other advertisements, promotional or marketing materials, that contain that portion of the film that use and misrepresent the infringing Diophy Bag as an authentic Louis Vuitton bag;

    (2) provide an accounting of the profits it gained from such misuse of the LVM Marks in *The Hangover: Part II*;

D. Awarding Louis Vuitton:

    (1) Warner Bros.' profits arising out of Warner Bros.' false designation of origin, treble damages, Louis Vuitton's reasonable attorneys' fees and its costs incurred in this action, all pursuant to 15 U.S.C. §1117(a);

(2)     its damages arising out of Warner Bros.' unfair competition and punitive damages arising out of Warner Bros.' intentional and bad faith acts of unfair competition;

(3)     Warner Bros.' profits arising out of Warner Bros.' dilution of the LVM Marks, as well as treble damages and Louis Vuitton's reasonable attorneys' fees arising out of Warner Bros.' knowing, intentional and bad faith dilution of the LVM Marks, all pursuant to *N.Y. Gen. Bus. Law § 360-m*; and

E.  Awarding Louis Vuitton such other and further relief as the Court deems just and proper.

Dated:  December 22, 2011          Respectfully submitted,

                                   By: _____

                                   Theodore C. Max (TM 1742)
                                   Sheppard Mullin Richter & Hampton LLP
                                   30 Rockefeller Plaza
                                   New York, New York 10112-0015
                                   (212) 653-8700
                                   (212) 655-1712 (facsimile)
                                   TMax@sheppardmullin.com

                                   Robert E. Shapiro (application for *pro hac vice* admission to be filed)
                                   Wendi E. Sloane (application for *pro hac vice* admission to be filed)
                                   Vito S. Solitro (application for *pro hac vice* admission to be filed)
                                   BARACK FERRAZZANO
                                   KIRSCHBAUM & NAGELBERG LLP
                                   200 W. Madison Street
                                   Suite 3900
                                   Chicago, Illinois 60606
                                   (312) 984-3100
                                   (312) 984-3150 (facsimile)
                                   rob.shapiro@bfkn.com
                                   wendi.sloane@bfkn.com
                                   vito.solitro@bfkn.com

                                   Attorneys for Plaintiff
                                   LOUIS VUITTON MALLETIER S.A.