

MAISON FONDÉE EN 1854

**By Federal Express Mail and E-Mail john.rogovin@warnerbros.com**

July 29, 2011

John Rogovin, Esq.
Executive Vice President and General Counsel
Warner Bros. Entertainment Inc.
4000 Warner Blvd.
Burbank, CA 91522

**Re: Unauthorized use of Louis Vuitton's Trademarks**

Dear Mr. Rogovin:

I am the Director of Civil Enforcement, North America for Louis Vuitton Malletier ("Louis Vuitton"). I write to express our concerns over the use of our trademarks in your recent movie "*The Hangover Part II*", that is currently being shown in theaters.

Louis Vuitton is the owner of world famous registered and common law trademarks, including the following marks (the "LV Trademarks").

    

For more than one hundred years, Louis Vuitton has manufactured and sold products bearing the "Toile Monogram," which is comprised of the initials LV and three distinctive elemental designs – a pinwheel design, a diamond with an inset pinwheel design, and a circle with an inset flower design, as depicted above. And for over a century, the Toile Monogram has been presented in light brown letters and designs against a dark brown background.

Louis Vuitton owns numerous United States federal trademark registrations for the LV Trademarks, including for the Toile Monogram and its components namely, Reg. Nos. 297,594, 1,643,625, 1,653,663, 1,770,131 and 2,399,161 (all for the Toile Monogram) and Reg. Nos. 2,181,753 (circle with an inset flower design as above), 2,177,828 (pinwheel design as above) and 2,773,107 (diamond with an inset pinwheel design as above). Louis Vuitton owns similar intellectual property rights worldwide.

John Rogovin, Esq.
Page 2



As a result of the quality of Louis Vuitton products and their promotion for decades, the LV Trademarks have acquired considerable value, and are well known to the consuming public and trade in the United States and throughout the world as identifying and distinguishing Louis Vuitton exclusively and uniquely as the source of the luxury merchandise to which they are applied.

Since its founding in 1854, Louis Vuitton has been at its core a luxury travel company. Louis Vuitton has established a worldwide reputation for creation, innovation, quality and style in women's and men's leather goods and fashion design. The LV Trademarks, including the Toile Monogram, are among the most famous marks in the luxury goods industry and the world. To help protect these marks and to preserve the exclusivity of Louis Vuitton products for our customers, Louis Vuitton closely controls the sale of its products and the use of its intellectual property including the LV Trademarks. For example, Louis Vuitton products are only sold in Louis Vuitton stores and boutiques and online through www.louisvuitton.com. We do not allow our products to be advertised or sold by any third party either through unauthorized media channels or unauthorized channels of distribution. In addition, we require any use of our products or trademarks in movies or television be with our express permission.

Accordingly, we were dismayed to discover that Warner Bros.' movie *The Hangover Part II* has two scenes in which the LV Trademarks or their infringements are featured prominently: i) a scene in which the three main characters are walking through an airport together with a redcap pushing a cart of what appear to be Louis Vuitton trunks, hard-sided luggage and two Keepall travel bags and with the Zach Galifiankis "Alan" character carrying a Keepall bag infringement from the Diophy group of companies (the "Diophy Bag") and ii) a subsequent scene in the airport lounge when the infringing Diophy Bag is featured center screen and identified by the "Alan" character as a "Louis Vuitton." Further, Warner Bros.' use of the LV Trademarks has not been limited to scenes in *The Hangover Part II* movie, but the Louis Vuitton products and their look-a-likes have appeared prominently in commercials and other advertisements for the movie. All such uses are collectively referred to as the "Offending Use." Attached as Exhibit A are examples of the Offending Use.

The Offending Use is troubling for a number of reasons. Our greatest concern is, of course, with the use and identification of a close copy of a Louis Vuitton bag and its LV Trademarks falsely as a genuine Louis Vuitton bag. In fact, the infringing use of the LV Trademarks on the Diophy Bag is the subject of a Section 337 proceeding commenced by Louis Vuitton in the International Trade Commission, *In the Matter of Certain Handbags, Luggage, Accessories and Packaging Thereof,* Investigation No. 337-TA-754. The harm to Louis Vuitton caused by this false identification is heightened by the Diophy Bag's close association in the movie with apparently genuine Louis Vuitton luggage.

John Rogovin, Esq.
Page 3

𝒴

As a result, the Offending Use is likely to cause confusion and mistake in the minds of the purchasing public and, in fact, has already served to falsely create the impression in the minds of millions of viewers and consumers who have seen the movie that the Offending Use was either authorized, sponsored, or approved by Louis Vuitton when, in fact, it was not. Your unauthorized use of the LV Trademarks and their copies constitutes trademark infringement, false designation of origin and unfair competition in violation of the Lanham Act.

Moreover, the display of the Offending Use and the Diophy Bag in your movie dilutes the LV Trademarks and our brand image. There can be no question that the LV Trademarks are famous and distinctive. The Offending Use blurs and tarnishes the LV Trademarks, and as a result constitutes trademark dilution under the Lanham Act and state law.

The harm caused by the Offending Use is exacerbated by the prominent use of the Louis Vuitton products and LV Trademarks in many commercials and advertisements of the movie and its widespread commercial success. Given the many millions of dollars promoting the film using the LV Trademarks and that the movie has grossed in box office receipts in excess of $550,000,000 worldwide since its release Memorial Day weekend, the number of consumers exposed to the above-referenced unauthorized and damaging use of the LV Trademarks is plainly significant.

Louis Vuitton is proud of its reputation for protecting intellectual property and creativity. We had thought that Warner Bros. as a major content creator and provider was equally proud of its own reputation for protecting intellectual property and would be respectful of the rights of others. We hope, and expect, now that our concerns have been brought to your attention that, at the very least, you immediately confirm the origin of the trunks, hard-sided luggage and Keepall bags on the pushcart.

Please contact me within ten (10) days to confirm the origin of all of the product, and to discuss what changes will be required and what may be necessary for us to reach a full resolution of this matter. Such a resolution will help protect the value of our brand (just as I am sure you want to preserve and protect the substantial value in the Warner Bros.' intellectual property and brand), but also avoid any further confusion among movie goers, and consumers.

I am sure you understand that, while we hope we can reach a complete resolution of this matter on an amicable basis, Louis Vuitton reserves all of its rights and remedies in connection with the issues described herein and otherwise.

Very truly yours,

Michael Pantalony, Esq.

Attachments

# Exhibit A



