# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

LOUIS VUITTON MALLETIER, S.A.,

        Plaintiff,

vs.

WARNER BROS. ENTERTAINMENT INC.,

        Defendant.

11-CV-09436 (ALC)

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO DISMISS**

Andrew H. Bart (AB-6724)
Gianni P. Servodidio (GS-0713)
David Z. Moskowitz
JENNER & BLOCK, LLP
919 Third Avenue
New York, New York 10022
(212) 891-1600
(212) 891-1699 (facsimile)

*Attorneys for Defendant*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 3

ARGUMENT ...................................................................................................................... 5

I.     Standard on a Motion to Dismiss ................................................................................ 5

II.    Warner Bros.' Expressive Use of LV's Mark In a Fictional Creative Work Is Fully
Protected By the First Amendment ............................................................................ 6

       A.     LV's Lanham Act Claim for False Designation of Origin and Related Unfair
Competition Claim Are Barred Under the First Amendment ................................ 6

       1.     The Challenged Use of LV's Marks Has Artistic Relevance to the Film ............... 8

       2.     The Challenged Use of LV's Mark is Not Explicitly Misleading ........................ 10

       3.     The First Amendment is Not Limited to Depictions of "Authentic"
Merchandise in Expressive Works ..................................................................... 12

III.    Warner Bros.' Challenged Use of LV's Mark Is Not Actionable Under
Trademark Law ...................................................................................................... 15

       A.     LV's Claims Do Not Allege Actionable Confusion Involving Consumer
Purchasing Decisions ......................................................................................... 15

       B.     Warner Bros. Has Not Made Actionable "Trademark Use" of LV's Mark ......... 16

       C.     Warner Bros.' Reference to LV's Mark is *De Minimis* ......................................... 18

IV.    LV's Dilution Claim Must Be Dismissed ................................................................ 19

       A.     The Dilution Claim Is Barred by the First Amendment ....................................... 20

       B.     LV Has Failed to State a Claim for Dilution ....................................................... 21

CONCLUSION ................................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

CASES

*ACLU of Georgia v. Miller*, 977 F. Supp. 1228 (N.D. Ga. 1997)..................................21

*American Family Life Insurance Co. v. Hagan,* 266 F. Supp. 2d 682 (N.D. Ohio 2002) ............20

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ....................................................6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................6

*Bery v. City of New York*, 97 F.3d 689 (2d Cir. 1996)......................................6

*Brown v. Entertainment Merchants Association*, 131 S. Ct. 2729 (2011).....................14

*Caterpillar Inc. v. Walt Disney Co.*, 287 F. Supp. 2d 913 (C.D. Ill. 2003) ............16, 17

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980)....................................................................6

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) .........................5

*Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330 (S.D.N.Y. 2000).........7, 20

*City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750 (1988) .....................6

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publishing Group, Inc.*, 886 F.2d 490 (2d Cir. 1989) ..........................................................................7, 10

*DeClemente v. Columbia Pictures Industries, Inc.*, 860 F. Supp. 30 (E.D.N.Y. 1994)..............11

*Dillinger, LLC v. Electronic Arts Inc.*, No. 1:09–cv–1236, 2011 WL 2457678 (S.D. Ind. June 16, 2011)..................................................................9, 13

*Dombrowski v. Pfister*, 380 U.S. 479 (1965) .............................................14

*E.S.S. Entertainment 2000, Inc. v. Rock Star Videos Inc.*, 547 F.3d 1095 (9th Cir. 2008)..............................................................8, 12, 13, 18

*Electronic Design & Sales, Inc. v. Electronic Data Systems Corp.*, 954 F.2d 713 (Fed. Cir. 1992)..............................................................................19

*Felix the Cat Productions, Inc. v New Line Cinema*, No. CV 99-9339 FMC (RCx), 2000 WL 770481, 54 U.S.P.Q.2d 1856 (C.D. Cal. 2000) ............................................18

*Girl Scouts of United States v. Bantam Doubleday Dell Publishing Group, Inc.*, 808 F. Supp. 1112 (S.D.N.Y. 1992), *aff'd*, 996 F.2d 1477 (2d Cir. 1993) .........................10

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985)..................................................................5

*Gottlieb Development LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625 (S.D.N.Y. 2008) ..............................................................................................................................18, 19

*Groden v. Random House, Inc.*, 61 F.3d 1045 (2d Cir. 1995).............................................7

*Hormel Foods Corp. v. Jim Henson Productions, Inc.*, 73 F.3d 497 (2d Cir. 1996)...................20

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007), *rev'd on other grounds sub. nom.*, *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).......................................................................................6

*Jones v. Bock*, 549 U.S. 199 (2007).....................................................................................5

*Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495 (1952) .........................................................6

*Kelly-Brown v. Winfrey*, No. 11 Civ. 7875 PAC, 2012 WL 701262 (S.D.N.Y. Mar. 6, 2012) ...........................................................................................................................16-17

*L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26 (1st Cir. 1987) .........................21

*Lang v. Retirement Living Publishing Co.*, 949 F.2d 576 (2d Cir. 1991)......................16

*LightHawk v. Robertson*, 812 F. Supp. 1095 (W.D. Wash. 1993)..................................21

*Louis Vuitton Malletier v. Donkey & Bourke, Inc.*, 561 F. Supp. 2d 368 (S.D.N.Y. 2008) ...........7

*Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894 (9th Cir. 2002) ...............................11, 12, 20, 21

*Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44 (2d Cir. 1978) ..................18

*New Kids on the Block v. News American Publishing, Inc.*, 971 F.2d 302 (9th Cir. 1992)..........17

*New York Stock Exchange, Inc. v. New York, New York Hotel LLC*, 293 F.3d 550 (2d Cir. 2002) .........................................................................................................................20

*Preston v. Martin Bregman Productions, Inc.*, 765 F. Supp. 116 (S.D.N.Y 1991)......................19

*Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924)..............................................................15

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)......................2, 6, 7, 8, 10, 11, 12, 13, 14, 20

*Steetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739 (2d Cir. 1998).............................18

*Stewart Surfboards, Inc. v. Disney Book Group LLC*, No. CV 10-2982 ......................11

*Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010) ................................. 20, 21-22

*Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339 (S.D.N.Y. 1998) ...........................7

*Twin Peaks Productions, Inc. v. Publications International Ltd*, 996 F.2d 1366 (2d Cir. 1993) ................................................................................................................... 7-8

*United States v. United Foods Inc.*, 533 U.S. 405 (2001) ............................................. 6

*United We Stand America, Inc. v. United We Stand, America New York, Inc.*, 128 F.3d 86 (2d Cir. 1997) ................................................................................................... 9-10

*Universal Communications System, Inc. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007) ................. 21

*Wham-O, Inc. v. Paramount Pictures Corp.*, 286 F. Supp. 2d 1254 (N.D. Cal. 2003) ..... 16, 17-18

*Woodard v. Jackson*, No. 1:03–CV–0844, 2004 WL 771244 (S.D. Ind. Mar. 25 2004) .............11

*Yankee Publishing Inc. v. News America Publishing Inc.*, 809 F. Supp. 267 (S.D.N.Y. 1992) ..............................................................................................................7, 20

## STATUTES

15 U.S.C. § 1125(a)(1)(A) ........................................................................................15

15 U.S.C. § 1127 ........................................................................................................17

N.Y. Gen. Business Law § 360-*l* ..............................................................................19

## OTHER AUTHORITIES

Pratheepan Gulasekaram, *Policing the Border Between Trademarks and Free Speech: Protecting Unauthorized Trademark Use in Expressive Works*, 80 Wash L. Rev. 887 (2005) .................................................................................................................8

## INTRODUCTION

In its Complaint in this action, plaintiff Louis Vuitton Malletier S.A. ("LV") has asserted trademark claims based on nothing more than the fleeting appearance of a "prop" bag and a single line of dialog in a full-length motion picture. However, the controlling case law clearly establishes that the First Amendment protects the rights of content creators to utilize trademarks as part of their creative expression without requiring the consent of the owners of those trademarks. Accordingly, defendant Warner Brothers Entertainment Inc. ("Warner Bros.") respectfully asks that the Court dismiss the Complaint as a matter of law.

In 2011, Warner Bros. released the full-length comedic film *The Hangover: Part II* ("the Film"), which details the exploits of a group of friends in Thailand for a bachelor party and wedding. In one of the early scenes, these characters are walking through the airport holding their carry-on bags. In the background, there is a brief shot of a sky cap pushing a cart with a few pieces of larger luggage. In a subsequent scene, when the carry-on bag of one of the characters is pushed aside, he says, "be careful, that is . . . that is a Lewis [sic] Vuitton." *In toto*, these scenes account for only about twenty-five seconds of screen time. There is no other mention of Plaintiff or its products anywhere in the Film. A full copy of the Film is annexed as Exhibit A to the Declaration of Gianni P. Servodidio filed herewith ("Servodidio Decl.").

Following the release of the Film, LV contacted Warner Bros. and alleged that the luggage used in one of the foregoing scenes was not manufactured by LV and therefore the appearance of the luggage and the quoted line of dialog were a "false designation of origin." When Warner Bros. rejected LV's demand to delete these scenes or pay LV millions of dollars in "damages," LV commenced the instant action for violations of the U.S. Trademark Act

1

("Lanham Act"), state unfair competition and dilution.  In its Complaint, LV seeks injunctive relief, profits, punitive damages and attorneys' fees.  *See* Compl. ¶¶ 5-7.

LV's claims cannot be reconciled with the dispositive authority holding that the First Amendment provides protection to creators of expressive works, like motion pictures, to use references to trademarks as part of their expression.  Indeed, it is well settled that the mere appearance of a trademark within an expressive work is insufficient as a matter of law to state a claim for relief under the Lanham Act or related state dilution laws.  In the seminal case in this area, *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), the Second Circuit Court of Appeals held that a film studio had no liability under the Lanham Act for references to the plaintiff's name in a motion picture if: 1) the use of the plaintiff's name had artistic relevance to the film; and 2) the studio had not "***explicitly misled***" prospective purchasers as to the source or sponsorship *of the film*.

LV is fully aware of the barrier created by *Rogers* and attempts to circumvent it by arguing that while *Rogers* would be a defense if the prop bag appearing in the Film was manufactured by LV, it is not a defense if the bag was a "knock-off" Vuitton bag.  *See* LV's Pre-Motion Letter dated February 10, 2012 at p. 3.  However, this argument misses the essence of this line of case law.  The protections afforded under the First Amendment do not turn on the issue of whether the expressive work depicts a "genuine" trademarked product.  Indeed, the cases, like *Rogers*, frequently address the use of a trademarked term to apply to something other than the related product or service.  Rather, the issue is the freedom of the author to incorporate references to real life – including references to trademarks and even to counterfeit goods – in creating the expressive work.  The ownership of a trademark confers many rights but not the right to alter or veto such creative expression.  Respectfully, the Court should decline to endorse

LV's novel yet unfounded attempt to limit First Amendment protections and dismiss the Complaint.[1]

The dismissal of these claims is not only mandated by the First Amendment considerations analyzed in *Rogers*, but also by basic principles of trademark law. As recognized in numerous cases, trademark laws protect only against the likelihood (not mere possibility) of confusion among an appreciable number of purchasers of the defendant's actual goods or services, *not against confusion generally.* The only purchasing decision made by a moviegoer is whether to purchase a ticket. Accordingly, Warner Bros. is responsible for accurately representing the source and sponsorship of the Film to these consumers. However, LV makes no allegation that Warner Bros. misled anyone as to the source of the Film itself. Instead LV's claim rests on the fanciful assumption that when a fictional character in a creative work refers to a trademark, that reference constitutes a legal representation of origin by the creators of the work. The only representation of origin made by the creator of an expressive work relates to the work itself. Accordingly, Warner Bros. cannot be subjected to claims under the Lanham Act or related state law claims based on the mere appearance of a product in a film (whether authentic or a knock-off) that does not explicitly mislead the purchasing public as to the source or sponsorship of the film.

## BACKGROUND

LV alleges that it is a producer of "high quality luggage, trunks, handbags, purses, wallets, fashion accessories, and a variety of other luxury products." Compl. ¶ 12. It claims

---

[1] Notably, this is not the only baseless attempt by LV to expand the scope of its rights as a trademark owner. Within the past month, it has been reported that LV wrongly accused the University of Pennsylvania Law School of "serious willful infringement" for depicting an obvious non-commercial parody of LV's trade dress on a poster for a student symposium on intellectual property in a manner designed to evoke the very issues to be discussed at the conference. *See* Servodidio Decl. Ex. B.

trademark rights in various designs and pattern for use in connection with various leather goods, luggage, clothing, jewelry, watches, etc. *Id.* ¶¶ 14-15.

Warner Bros. is one of the oldest and most respected producers of motion picture and television shows in the country and the world. *Id.* ¶ 28. In the summer of 2011, Warner Bros. released the Film, which is a full-length comedic motion picture. The Film picks up the story of four main characters from the original movie entitled *The Hangover*; namely "Alan" (played by Zach Galifianakis); "Phil" (played by Bradley Cooper); "Stu" (played by Ed Helms) and "Doug" (played by Justin Bartha). As the Film opens, Stu announces his plans to get married in Thailand. However, he has serious concerns about inviting Alan to his wedding. As seen in both films, Alan comes from a wealthy family, has an extremely idiosyncratic personality and behaves in outlandish ways that have unintended comedic consequences for his companions.

In one of the early sequences in the Film, the main characters are seen walking through LAX airport to begin their trip to Thailand. Alan is dressed flamboyantly and smoking a pipe as he walks through the airport. As alleged in the Complaint, "[i]n the background . . . , a porter is pushing what appear to be Louis Vuitton trunks, some hard sided luggage, and two ... travel bags on a dolly." *Id.* ¶ 33. While still at the airport, the main characters meet another character named "Teddy," who is the younger brother of "Stu's" fiancé. Teddy is a clean-cut, sixteen-year-old "genius" who attends Stanford University. Alan feels threatened by Teddy and is resentful of his presence in the group. This tension is an important theme in the Film and is manifested when Stu moves Alan's bag to make room for Teddy and Alan exclaims: "careful

that is . . . that is a Lewis [sic] Vuitton." *Id.* ¶ 34. These two scenes are collectively referred to as the "Challenged Scenes."[2]

On December 23, 2011, LV filed the instant action alleging violations of Section 43(a) of the Lanham Act, New York common law unfair competition and related state dilution law. The Complaint alleges that Alan's carry-on bag is a "knock-off" product not manufactured by LV.[3] Rather than recognizing that the use of the bag is part of the creative expression of the Film, LV self-servingly characterizes it as a misrepresentation by Warner Bros. "that the infringing [prop] bag is a product of Louis Vuitton" and makes the unsupported and counterintuitive assertions that moviegoers would be "likely to presume" that the prop was authentic and that LV sponsored the use of prop or provided it to Warner Bros. *Id.* ¶¶ 43, 52. As discussed herein, these allegations fail to state a claim.

## ARGUMENT

### I.    Standard on a Motion to Dismiss

The Court's function on a motion to dismiss is "not to weigh evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). Thus, "[a] complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

---

[2] Because the Complaint refers to and relies on the Film, the entire Film may be treated as part of the Complaint and considered by the Court on a Motion to Dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (explaining that the complaint is deemed to include "any statements or documents incorporated in it by reference" (quotation marks omitted)).

[3] Warner Bros. does not have sufficient expertise to assess whether the prop bag appearing in the Film is manufactured, licensed or approved of by LV; however, for the purposes of this Motion only, Warner Bros. will assume LV's representations with respect to the source of the bag to be accurate.

Moreover, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court adopted a "plausibility" requirement which obliges a pleader to amplify a claim with some factual allegations needed to render the claim plausible.  550 U.S. 544, 570 (2007); *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007), *rev'd on other grounds sub. nom.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

## II.  Warner Bros.' Expressive Use of LV's Mark In a Fictional Creative Work Is Fully Protected By the First Amendment

### A.  LV's Lanham Act Claim for False Designation of Origin and Related Unfair Competition Claim Are Barred Under the First Amendment

As a motion picture, the Film falls within the protection of the First Amendment as "non-commercial" speech.[4]  *See Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 500-02 (1952).  In order for LV to overcome this First Amendment immunity and challenge the Film under the Lanham Act, it must satisfy the high threshold set forth by the Second Circuit Court of Appeals in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989).  That case involved a motion picture entitled *Ginger and Fred* about a fictional Italian couple who attempt to style their dancing career after that of Fred Astaire and Ginger Rogers.  Ginger Rogers sued under Section 43(a) of the Lanham Act for

---

[4] Only in the very narrow category of "commercial speech," which the Supreme Court defines as "speech that does no more than propose a commercial transaction," *United States v. United Foods Inc.*, 533 U.S. 405, 409 (2001), and a handful of other narrow categories that are inapplicable here, does speech receive less than full First Amendment protection.  *See Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York*, 447 U.S. 557 (1980).  Since the Film indisputably does not propose a commercial transaction, it fully qualifies as a "non-commercial speech" entitled to receive full First Amendment protection. *See, e.g., City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 756 n.5 (1988); *see also Bery v. City of New York*, 97 F. 3d 689 (2d Cir. 1996).  LV does not allege otherwise.

false designation of origin, alleging that the title of the film suggested that she sponsored, endorsed or was otherwise involved in the film. *Id.* at 997.

Recognizing that extending the Lanham Act to works of art would stifle "the public's interest in free expression," *Rogers* holds that, where the use of the mark at issue (1) has "at least some artistic relevance to the work" and (2) "is not explicitly misleading," the Lanham Act is "inapplicable." *Id.* at 999-1000. In order for a representation to be *explicitly* misleading, it must contain an "explicit misstatement," "overt claim," or "explicit indication" as to the plaintiff's endorsement or sponsorship of the Film, beyond the mere appearance or use of the plaintiff's trademark. *Id.* at 1001.[5]

As the Second Circuit later elaborated, Lanham Act claims must be construed "narrowly" in "any case where an expressive work is alleged to infringe a trademark." *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Group, Inc.*, 886 F.2d 490, 494-95 (2d Cir. 1989). The rationale for this narrow construction of the Lanham Act is plain: the First Amendment interest in promoting the free and open exchange of ideas would be undermined if trademark owners could challenge expressive works under the rubric of the Lanham Act. *See Rogers*, 875 at 998-99; *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995) ("In the context of expressive works, we have been careful not to permit the overextension of the Lanham Act to intrude on First Amendment values."); *Twin Peaks Prods., Inc. v. Publ'ns Int'l Ltd.*, 996 F.2d 1366, 1379

---

[5] The standards for Section 43(a) claims of the Lanham Act and common law unfair competition claims "are almost indistinguishable." *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 363 (S.D.N.Y. 1998). Indeed, the elements of unfair competition "mirror" the Lanham Act, except that plaintiffs must in addition show bad faith on the state law claim. *See Louis Vuitton Malletier v. Donkey & Bourke, Inc.*, 561 F. Supp. 2d 368, 381 (S.D.N.Y. 2008) (analyzing Lanham Act and unfair competition claims together and finding no evidence of likely consumer confusion). As such, courts have repeatedly held that where the First Amendment limits application of the Lanham Act, it also bars state law unfair competition claims. *See, e.g.*, *Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330, 341 (S.D.N.Y. 2000); *Yankee Publ'g Inc. v. News America Publ'g Inc.*, 809 F. Supp. 267, 282 (S.D.N.Y. 1992).

(2d Cir. 1993) ("the finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment interest recognized by *Rogers*").

It is manifest that the case for First Amendment protection is significantly stronger here than in *Rogers* which used the trademark at issue as the title of a motion picture and thus came far closer to a representation as to the origin of or endorsement of the film. As the court in *Rogers* recognized, the title of a film is a "significant means of marketing the film to the public." *Rogers*, 875 F.2d at 998. Nonetheless, the Court held that any risk of confusion in that case was outweighed by the First Amendment. *Id.* at 1000.

In contrast, LV's trademark appears for fleeting seconds within the context of the Film thereby making any claim of confusion far more tenuous than in *Rogers*. *See infra* Section III.C; *see also* Pratheepan Gulasekaram, *Policing the Border Between Trademarks and Free Speech: Protecting Unauthorized Trademark Use in Expressive Works*, 80 Wash L. Rev. 887, 920-22 (2005) (explaining that "[u]nlike a work's title, which clearly has severable market significance for advertising and source-identification, the contents of the work are generally presented in context and with explanation."). Accordingly, it is hardly surprising that the First Amendment protects any use of a trademark in the body of the defendant's expressive work. *See, e.g., E.S.S. Entm't 2000, Inc. v. Rock Star Videos Inc.*, 547 F.3d 1095, 1101 (9th Cir. 2008) (rejecting Lanham Act claims based on appearance of unauthorized and fictionalized replica of plaintiff's night club in video game).

### 1.    The Challenged Use of LV's Marks Has Artistic Relevance to the Film

As *Rogers* and its progeny make clear, the threshold for assessing artistic relevance is extremely low and the challenged use must only have more than "zero" relevance to the Film. *Rogers*, 875 F.2d at 999 (holding that the threshold is "no artistic relevance to the underlying work *whatsoever*" (emphasis added)); *E.S.S. Entm't 2000*, 547 F.3d at 1100 (holding that under

8

*Rogers* "the level of relevance merely must be above zero"); *Dillinger, LLC v. Electronic Arts Inc.*, No. 1:09–cv–1236, 2011 WL 2457678, at *6 (S.D. Ind. June 16, 2011) ("It bears repeating that it is not the role of the Court to determine how meaningful the relationship between a trademark and the content of a literary work must be; consistent with *Rogers*, any connection whatsoever is enough . . . .").

The allegations in LV's Complaint (in tandem with a review of the Film) demonstrate that the challenged use of LV's trademarks is artistically relevant to the Film. Here, the initial "airport" scene establishes that the characters are beginning a journey together to attend Stu's wedding. The fact that Alan appears to be bringing a large volume of designer luggage is consistent with his wealthy background and quirky persona and underscores his excitement about being invited to the wedding. The second scene sets the stage for the relationship between the Alan and Teddy. This comedic tension between these characters is introduced when Alan shows more concern for his designer luggage than for Teddy's comfort. This hostility between the Alan and Teddy characters manifests itself throughout the Film and is integral to the development of the plot. *See* Ex. A to Servodidio Decl.

Moreover, the single reference to "Lewis [sic] Vuitton" in the Film has a comedic purpose consistent with the portrayal and development of Alan's character. Alan's pronunciation of "Louis" as it would be said in English (*i.e.*, "Lewis"), rather than French (*i.e.* "Louie"), presents the comedic contrast of Alan as a vain and pretentious character who cannot even pronounce the brand name of one of his expensive possessions.[6] Comedy in and of itself is recognized as a protected expressive purpose by the Second Circuit, *see United We Stand*

---

[6] Indeed, even if the bag appearing in the Film was a knock-off product as alleged by LV, the use of such a "fake" prop would be completely consistent with this comedic depiction of Alan in the Film.

*America, Inc. v. United We Stand, America New York, Inc.*, 128 F.3d 86, 93 (2d Cir. 1997), and here that comedy has the dual expressive purpose of developing Alan's character.

Thus, the use of the prop luggage and the line of dialog advances the artistic goals of setting the context for the storyline and establishing facts about (i) Alan's character; (ii) his excitement with the journey; and (iii) the comedic tension between Alan and Teddy.  As such, this creative expression is clearly protected by the First Amendment.

### 2.    The Challenged Use of LV's Mark is Not Explicitly Misleading

Given the artistic relevance of the challenged use of its marks, LV's Lanham Act claim is barred absent a showing that the Film "explicitly misleads as to the source or the content *of the work.*" *Rogers*, 875 F.2d at 999 (emphasis added). That is, the alleged false designation of origin must be explicitly misleading as to the source or sponsorship of the Film itself.  LV does not and cannot make such an allegation.[7]

In a recent case involving similar facts, the court dismissed a Section 43(a) claim brought against Disney based on its use of the plaintiff's STEWART SURFBOARDS trademark on the back cover of a book about a Disney character.  In dismissing the plaintiff's claim on the pleadings, the court concluded that the plaintiff had failed to overcome *Rogers* because:

> The *Hannah Montana* book contains no such explicit misstatement that it
> is sponsored by or about Stewart Surfboards.  It does not say anything like
> "Brought To You By Stewart Surfboards" or "Presented By Stewart
> Surfboards," nor does it indicate that it is story about Stewart or his
> surfboards.  To the contrary, the book jacket and spine include the Disney
> logo, the "Disney Press" Logo, and the Disney channel logo, and the back

---

[7] Courts have further recognized that even some level of actual consumer confusion arising from a use protected under the *Rogers* test is not actionable because of the threat infringement claims present to First Amendment rights.  *See Cliffs Notes*, 886 F.2d at 494-95 (First Amendment protected books even though survey evidence showed consumers would be misled); *Girl Scouts of U.S. v. Bantam Doubleday Dell Publ'g Group*, 808 F. Supp. 1112, 1128 (S.D.N.Y. 1992) (even a survey showing 12.6% of the public was confused was not significant enough to overcome the First Amendment concerns in a Lanham Act and unfair competition challenge to fictional works), *aff'd*, 996 F.2d 1477 (2d Cir. 1993).

and inside flaps of the jacket describe the book as a story about a girl's summer vacation."

Ex. C to Servodidio Decl., *Stewart Surfboards, Inc. v. Disney Book Group LLC*, No. CV 10-2982, slip op. at 12 (C.D. Cal. 2011); *see also Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002) (affirming dismissal of Lanham Act claims against "Barbie Girl" song because the song title was not "explicitly mislead[ing]"); *Woodard v. Jackson*, No. 1:03–CV–0844, 2004 WL 771244, at *7 (S.D. Ind. Mar. 25, 2004); *DeClemente v. Columbia Pictures Indus., Inc.*, 860 F. Supp. 30, 51-52 (E.D.N.Y. 1994) (finding no liability under the *Rogers* test because the film title *The Karate Kid* did not contain an *explicit signifying endorsement*, such as "*The Karate Kid*, an authorized biography [of plaintiff]").

Here, the Warner Bros.' name and trademarks all are clearly displayed to the audience at the outset and conclusion of the Film. *See* Ex. A to Servodidio Decl. LV does not and cannot allege that *Warner Bros*. made any *explicit misrepresentations* or any express statements at all as to LV's sponsorship or endorsement of the Film, *i.e.*, "The Hangover II: *Brought to you by Louis Vuitton*. Nor can LV allege that its products are a theme or focus of the Film. Rather, the Challenged Scenes account for about twenty-five seconds of screen time in a full-length motion picture.

At most, LV's Complaint alleges indirect and *implicit* conduct by Warner Bros. According to LV, upon seeing a prop bag resembling Plaintiff's luggage in the Film, moviegoers and consumers "are *likely to presume* that the brand owner has given permission for use of the product or even affirmatively sponsored and endorsed such use." Compl. ¶ 43 (emphasis added). But this is the very kind of attenuated "confusion" claim arising from the mere appearance of a trademark that is foreclosed under *Rogers*. In order to survive First Amendment scrutiny, *Rogers* requires LV to have alleged that Warner Bros. engaged in a direct and explicit false statement

11

concerning plaintiff's sponsorship or origin *of the Film*—not the cameo appearance of a prop bag or a passing line of dialog by a fictional character.[8]

In short, the mere reference to LV's mark within the Film is not sufficient to satisfy the second prong of the *Rogers* test. 875 F.2d at 999-1000 (explaining that the mere appearance of celebrity's name in a title would not "explicitly mislead" as to endorsement or sponsorship); *E.S.S. Entm't 2000*, 547 F.3d at 1100 ("[T]he mere use of a trademark alone cannot suffice to make such use explicitly misleading."); *MCA Records,* 296 F.3d at 902 (same). Any other result "would render *Rogers* a nullity." *E.S.S. Entm't 2000*, 547 F.3d at 1099; *MCA Records*, 296 F.3d at 902.

### 3.   The First Amendment is Not Limited to Depictions of "Authentic" Merchandise in Expressive Works

Unable to overcome the *Rogers* test, LV's Complaint seeks to end-run around the First Amendment based on a proposed categorical rule that Warner Bros. forfeited all protection under the First Amendment when the Alan character in the Film referred to an allegedly non-genuine prop bag as a "Lewis [sic] Vuitton." As discussed below, however, LV's attempt to limit the scope and applicability of *Rogers* cannot be reconciled with the decision itself or with cardinal principles of First Amendment jurisprudence that preclude content-based restrictions on expressive works.

---

[8] LV's allegation that it was Warner Bros. itself who misrepresented the source of the prop bag is plainly counter-factual but also entirely irrelevant. To state the obvious, Alan is not some corporate spokesperson for Warner Bros. authorized to opine on the source of the props appearing in the Film. Rather, Alan is a famously quirky ***fictional character*** who cannot even pronounce LV's brand name correctly calling his bag a "Lewis [sic] Vuitton" for comedic effect. However, this entire issue has no bearing whatsoever on the First Amendment analysis. Under *Rogers,* only alleged misrepresentations with respect to the source or sponsorship of *the film itself*, not a prop carried by a fictional character, can give rise to a Lanham Act violation. 875 F.2d at 999.

First, the *Rogers* decision itself forecloses LV's attempt to distinguish between the First Amendment protections afforded to the use of "authentic" as opposed to "knock-off" trademarked properties. As noted above, the movie *Ginger and Fred* was not about the actual movie stars, Ginger Rogers and Fred Astaire. Rather, it was about two fictional cabaret performers known as "Ginger and Fred" appearing in an Italian television show. *Rogers*, 875 F.2d at 999. Accordingly, the title itself was a reference to a "knock-off" product. It was for this reason that the plaintiff in *Rogers* argued that the title and marketing of the film would confuse consumers as to the content and sponsorship of the film itself. The court nonetheless held that the First Amendment foreclosed LV's claim under Section 43(a) of the Lanham Act and noted that any risk of confusion "is outweighed by the danger that suppressing an artistically relevant though ambiguous title will unduly restrict expression." *Id.* at 1001.

Other courts also have applied *Rogers* to cases involving alleged infringements of a plaintiff's trademark or trade dress in connection with "non-genuine" products. For example, in *E.S.S. Entertainment 2000*, 547 F.3d at 1097-98, the plaintiff asserted a claim under Section 43(a) of the Lanham Act against a popular video game that featured a replica of the plaintiff's PLAY PEN night club. In that case, the creators of the game sought to recreate a fictionalized version of Los Angeles called "Los Santos." In one neighborhood depicted in the video game, a virtual strip club appears called the "Pig Pen" which mimicked the overall "look and feel" of plaintiff's club. *Id.* at 1098-1100. The court nonetheless applied the *Rogers* test and held that this altered version of the plaintiff's mark and trade dress was entitled to protection under the First Amendment because it was artistically relevant and did not explicitly mislead consumers as to the source or content of the work." *Id.*; *see also Dillinger, LLC*, 2011 WL 2457678, at *6

(applying *Rogers* to use of plaintiff's name to a replica of a "Dillinger Tommy gun" appearing in a video game).

Simply put, the test for invoking First Amendment protections for the use of trademarks in creative works does not hinge on whether the trademarked product is genuine or not. Indeed, even if the filmmakers had deliberately used fake bags and portrayed Alan as being hopelessly "confused" about their source, this would not somehow nullify the protection of the First Amendment. As a matter of bedrock First Amendment law, expressive works such as the Film cannot be subject to content-based restrictions based on their message, ideas or subject matter. *Brown v. Entm't Merchants Ass'n*, 131 S. Ct. 2729, 2733 (2011). No brand owner has the right to "veto" artistic decisions involving the appearance of products in expressive works under the guise of a trademark claim because they dislike the message being delivered to the audience. So long as the references to plaintiff's trademark are artistically relevant and do not expressly mislead viewers as to the source or sponsorship of the Film – neither of which is disputed here – the First Amendment forecloses claims under the Lanham Act.

*** 

*Rogers* and its progeny compel the conclusion that the mere appearance of a trademark within a film is not sufficient to state a claim for false designation of origin irrespective of the origin of the prop bag. To hold otherwise, and to subject this use and similar uses to protracted litigation, will significantly chill constitutionally protected expression. *Cf. Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965) ("The chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure."). For these reasons, Warner Bros. respectfully requests that the Court dismiss LV's trademark and unfair competition claims in full.

14

III.    **Warner Bros.' Challenged Use of LV's Mark
        Is Not Actionable Under Trademark Law**

Although the *Rogers'* test and its protection of First Amendment rights is an absolute bar
to the claims in this case, other courts have reached the same conclusion by other means.
Consistent with those cases, dismissal is also appropriate here because: (i) LV fails to allege any
confusion related to consumer purchasing decisions; (ii) Warner Bros. has not engaged in any
actionable "trademark use" of LV's mark, *i.e.*, the use by the defendant of a mark in order to
identify the source or sponsorship of the defendant's own goods or services; and (iii) the accused
use of LV's marks is legally *de minimis*.

A.      **LV's Claims Do Not Allege Actionable Confusion
        Involving Consumer Purchasing Decisions**

LV's Complaint seeks to assert claims based on alleged "misrepresentations" made by a
fictional character about the source of a prop bag appearing in the Film.  *See* Compl. ¶¶ 3, 35, 42,
45, 52.  However, as a matter of basic trademark law, such claims of "confusion in the air"
unrelated to the actual goods offered to consumers by Warner Bros are not actionable.

The Lanham Act and related state unfair competition law address consumer confusion as
to the affiliation, origin, sponsorship, or approval of the defendant or its products (or services).
*See* 15 U.S.C. § 1125(a)(1)(A) (providing claim arising from confusion as to the defendant or the
"origin, sponsorship or approval of [the defendants'] *goods, services or commercial activities*.").
*see also Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) ("A trade mark only gives the right
to prohibit the use of it so far as to protect the owner's good will against the sale of another's
product as his.").

Thus, under the plain meaning of the statute, Section 43(a) of the Lanham Act requires
that there be some plausible nexus between allegations of confusion and the defendant and its

actual goods or services offered for sale to consumers.  As the Second Circuit has held, trademark laws "protect[] only against mistaken purchasing decisions and not against confusion generally." *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 582-83 (2d Cir. 1991) (quotation marks omitted).

Here, the only purchasing decision made by a moviegoer is whether to buy a ticket. There is no allegation that any reference to the LV's mark or products has any impact on that decision.  Warner Bros. is not in the business of selling handbags or props – authentic or not – and has no legal responsibility as to warrant their source.  Whether any member of the public, as LV alleges, somehow mistakenly believed that the prop bag carried by the Alan character was an authentic Louis Vuitton bag is irrelevant.  LV's inability to plead that any "confusion" linked to the Film itself is fatal to LV's claims regardless of the source or origin of a prop bag appearing in the Film.  *See Wham-O, Inc. v. Paramount Pictures Corp.*, 286 F. Supp. 2d 1254, 1262 (N.D. Cal. 2003) ("Consumers and viewer will not mistake plaintiff for a movie production house, and consumers and viewers will not mistake defendants for a purveyor of toys."); *Caterpillar, Inc. v. Walt Disney Co.*, 287 F. Supp. 2d 913, 919 (C.D. Ill. 2003) (concluding that no consumer purchasing decision would be affected based on alleged confusion regarding sponsorship of film from use of plaintiff's products).

**B.      Warner Bros. Has Not Made Actionable "Trademark Use" of LV's Mark**

LV's claims also fail because there is no allegation that Warner Bros. used LV's trademarks as means to denote the source or sponsorship of Warner Bros.' own goods or services, *i.e.*, the Film.  The failure to allege "trademark use" is also fatal to LV's claims.

It is well established that where a defendant does not use a trademark to identify the source or sponsorship of its products, there can be no actionable trademark infringement.  *See, e.g.*, *Kelly-Brown v. Winfrey*, No. 11 Civ. 7875 PAC, 2012 WL 701262, at *3-5 (S.D.N.Y. Mar.

16

6, 2012) (dismissing Lanham Act claims on a motion to dismiss because the use of plaintiff's

trademarked phrase "Own Your Power" on the cover of a magazine was not a trademark use

where the source of defendant's product (the magazine) was clearly identified on the cover).  As

one court observed:

> Cases like these are best understood as involving a non-trademark use of a
> mark – a use to which the infringement laws simply do not apply. . . .
> Indeed, we may generalize a class of cases where the use of the trademark
> does not attempt to capitalize on consumer confusion or to appropriate the
> cachet of one product for a different one.  Such nominative use of a mark
> – where the only word reasonably available to describe a particular thing
> is pressed into service – lies outside the strictures of trademark law:
> Because it does not implicate the source-identification function that is the
> purpose of trademark [law], it does not constitute unfair competition; such
> use is fair because it does not imply sponsorship or endorsement by the
> trademark holder.

*New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 307-08 (9th Cir. 1992); *see also*

15 U.S.C. § 1127 (defining the term "trademark" as "any word, name, symbol, or device, or any

combination thereof—used by a person . . . ***to identify and distinguish his or her goods . . . from***

***those manufactured or sold by others and to indicate the source of the good***" (emphasis

added)).

Indeed, virtually every court to address similar claims has concluded that the passing

appearance of a trademarked product in a film is not an infringing trademark use.  For example,

in *Caterpillar, Inc. v. Walt Disney Co.*, 287 F. Supp. 2d 913 (C.D. Ill. 2003), the court refused to

grant an injunction under Section 43(a) of the Lanham Act based on the appearance of

Caterpillar bulldozers bearing Caterpillar trademarks over the course of about eight minutes in a

motion picture.  The court recognized that "the appearance of products bearing well known

trademarks in cinema and television is a common phenomenon" and pointed out that the "mere

appearance" of a Ford Taurus in generic car chase scene would not, by itself, support an

infringement claim.  *Id.* at 919-20; *see also Wham-O*, 286 F. Supp. at 1262-63 (no

17

infringement based on appearance of "Slip `N Slide," even though product identified by name in film, because that would not cause consumer confusion as to source or endorsement of film); *E.S.S. Entm't 2000*, 547 F.3d at 1098-1101 (appearance of a simulation of plaintiff's strip club in video game would not cause confusion as to source or sponsorship of video game).

The threshold requirement that the use of a trademarked product in a creative product must be a "trademark" use to be actionable is underscored in the case of *Felix the Cat Productions, Inc. v New Line Cinema*, 2000 WL 770481, 54 U.S.P.Q.2d 1856, 1858 (C.D. Cal. 2000), where the court held that even the defendants' use of an entire cartoon sequence featuring plaintiff's trademarked character named "Poindexter" in a film was not the use of a mark "to identify or distinguish goods to indicate their source as required to fall under the purview of trademark law." *Id.* (internal quotations omitted).

### C.   Warner Bros.' Reference to LV's Mark is *De Minimis*

LV's claims also should be dismissed because they seek to impose liability on Warner Bros. based entirely on the fleeting references to LV's name and products in a full-length motion picture. Such *de minimis* use of a mark is simply not sufficient to state a plausible claim for the use of a false designation of origin under the Lanham Act.

In order support a violation of the Lanham Act or related state law, a plaintiff must show a probability, not just a possibility of confusion among an *appreciable number of consumers*. *See Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 742-43 (2d Cir. 1998); *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978). Thus, claims based on passing or *de minimis* references to a trademark are not sustainable. For example, in an analogous case, Judge Chin dismissed a Lanham Act claim against a movie studio based on the fleeting appearance of a pinball machine as a prop in the film. *Gottlieb Development LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 634-35 (S.D.N.Y. 2008). In rejecting the claims, the court

18

noted that "courts are not concerned with 'mere theoretical possibilities of confusion' or '*de minimis*'" situations in trademark cases.  *Id.* at 635 (citation omitted); *see also Elec. Design & Sales, Inc. v. Elec. Data Sys. Corp.*, 954 F.2d 713, 717 (Fed. Cir. 1992); *cf. Preston v. Martin Bregman Prods., Inc.*, 765 F. Supp. 116, 120 (S.D.N.Y 1991) (fleeting use of name or likeness in movie not actionable under right of privacy statute).

 For the same reasons here, LV cannot plausibly allege that the mere appearance of LV's product (whether authentic or a knock off) would confuse ordinarily prudent consumers as to the sponsorship or affiliation of the Film or any products sold by LV.  Indeed, LV's claim is even more implausible than in *Gottlieb* because LV assumes that the audience will perceive (based on a few seconds of screen time) that the bag carried by Alan is different from a genuine LV product and that those same moviegoers will recognize the same bag in a real world setting and experience "confusion" based on a line of dialog in the Film.  Respectfully, this is exactly the kind of wildly speculative claim that should not survive beyond the pleading stage.

## IV. LV's Dilution Claim Must Be Dismissed

 LV's remaining claim under the New York dilution statute, N.Y. Gen. Business Law § 360-*l*, must also be dismissed for two reasons: (1) the dilution claim, like the Lanham Act and unfair competition claims, is barred by the First Amendment; and (2) LV failed to state a claim for dilution because LV has not alleged that Warner Bros. used LV's marks to refer to, or associate with, Warner's Bros. own product, *i.e.*, the Film.

 Dilution differs from trademark infringement and unfair competition because it is not premised on a likelihood of confusion or harm to consumers.  Rather, it is based on allegations of a "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name . . . notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."  N.Y. Gen. Bus. Law § 360-*l*.  Dilution under

New York law has been interpreted to involve either "blurring" or "tarnishment." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 111 (2d Cir. 2010). "Blurring occurs where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *New York Stock Exch. v. New York, New York Hotel LLC*, 293 F.3d 550, 558 (2d Cir. 2002) (internal quotation marks omitted). Tarnishment arises when the plaintiff's trademark is used in a clearly unwholesome or unsavory context. *See Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507 (2d Cir. 1996) (no tarnishment to the trademark SPAM found from the use of the character name "Spa'am" in a Muppets puppet movie).

### A.     The Dilution Claim Is Barred by the First Amendment

While the elements of state law dilution differ from the Section 43(a) Lanham Act and unfair competition claims, the First Amendment applies with equal vigor. Indeed, some courts have concluded that the First Amendment concerns underlying the *Rogers* test apply with even greater force with respect to dilution. *See MCA Records*, 296 F.3d at 904. Within this circuit, various courts have held that whenever Lanham Act and unfair competition claims are barred under the *Rogers* test, so too are New York state dilution claims. *See, e.g., Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330, 341 (S.D.N.Y. 2000) ("Plaintiff's pendent state law claims under New York's anti-dilution statute . . . are likewise dismissed because they are based on the same permissible conduct [as the Lanham Act claims]."); *Yankee Publ'g Inc. v. News America Publ'g Inc.*, 809 F. Supp. 267, 282 (S.D.N.Y. 1992) (Leval, J.) (same).

Indeed, courts have rejected dilution claims seeking to enjoin non-commercial speech such as the Film even without application of the *Rogers* test holding that dilutions laws only apply to purely commercial speech. As such, LV's dilution claims should be dismissed on this basis as well. *See, e.g., American Family Life Ins. Co. v. Hagan*, 266 F. Supp. 2d 682, 701 (N.D.

Ohio 2002); *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 32 (1st Cir. 1987) ("It offends the Constitution . . . to invoke the [Maine] anti-dilution statute as a basis for enjoining the noncommercial use of a trademark by a defendant engaged in a protected form of expression."); *see also MCA Records*, 296 F.3d at 906-07 (holding that the federal dilution law applies only to commercial speech); *cf. ACLU of Georgia v. Miller*, 977 F. Supp. 1228, 1233 (N.D. Ga. 1997); *LightHawk v. Robertson*, 812 F. Supp. 1095, 1101-03 (W.D. Wash. 1993).[9]

### B.      LV Has Failed to State a Claim for Dilution.

In addition to preclusion of such claims under the First Amendment, LV has failed to state a claim for dilution because LV has not alleged that Warner Bros. ever used LV's marks to refer to, or to associate with, Warner Bros.' own products.  The recent *Tiffany* case before the Second Circuit makes clear that dilution requires such a connection to the defendant's own products.  In the *Tiffany* case, the famous jeweler Tiffany's sued eBay for trademark infringement, dilution, and false advertising based on counterfeit products listed and sold on the eBay website. *Tiffany (NJ) Inc.*, 600 F.3d at 111.  The Second Circuit rejected Tiffany's argument that the counterfeit products appearing on eBay's website constituted dilution by eBay, even assuming those counterfeit products harmed Tiffany's brand.  As the court explained: "Tiffany argues that counterfeiting dilutes the value of its product.  Perhaps.  But insofar as eBay did not itself sell the goods at issue, it did not itself engage in dilution." *Id.* at 112; *see also id.* (agreeing with the district court's conclusions that there could be no blurring where "eBay never used the TIFFANY Marks in an effort to create an association with its own product" and no

---

[9] In addition, should the Court determine that Warner Bros.' use of LV's marks did not constitute a "trademark use," *see supra* Section III.B, that determination would similarly bar the dilution claim.  *See, e.g., Universal Commc'ns Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 424 (1st Cir. 2007) (applying trademark use analysis to dilution claim).

tarnishment where "eBay has never used the [Tiffany] Marks to refer to eBay's own product" (quotation marks omitted)).

Similarly here, LV does not allege that Warner Bros. has ever used LV's Marks in an effort to create an association with its own product or to refer to its own product.  To the extent there is any dilution alleged by LV, it is dilution by the makers and sellers of the "Diophy Bag," not by Warner Bros.  LV has not alleged any connection between Warner Bros. and makers or sellers of the Diophy Bag, nor could it.  Just as with eBay, Warner Bros. does not sell the good allegedly at issue (the Diophy Bag), and therefore Warner Bros. itself has not engaged in dilution as a matter of law.  LV has failed to state a claim for dilution.

## CONCLUSION

Based on the foregoing, LV's claims should be dismissed forthwith.

Dated:   New York, New York
         March 14, 2012

By: _____
         Andrew H. Bart (AB-6724)
         Gianni P. Servodidio (GS-0713)
         David Z. Moskowitz
         Jenner & Block LLP
         919 Third Avenue
         37th Floor
         New York, NY 10022-3908
         (212) 891-1600

         *Attorneys for Defendant*

22

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2012, a true and correct copy of the foregoing

Memorandum of Law in Support of Motion to Dismiss was filed electronically.  Notice of this

filing will be sent to all registered parties by operation of the Court's electronic filing system.

_____/s/ Gianni P. Servodidio_____
Gianni P. Servodidio