UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------
                       X

**Louis Vuitton Mallatier S.A.,**

               Plaintiff,

       -against-

**Warner Brothers Entertainment Inc.,**

              Defendant.

---------------------------------------

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6-15-12

11 Civ. 9436 (ALC) (HBP)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., District Judge:**

On December 22, 2011, Louis Vuitton Malletier, S.A. ("Louis Vuitton") filed a complaint against Warner Bros. Entertainment Inc. ("Warner Bros."), focusing on Warner Bros.' use of a travel bag in the film "The Hangover: Part II" that allegedly infringes upon Louis Vuitton's trademarks. Plaintiff's complaint asserts three claims for relief: (1) false designation of origin/unfair competition in violation of § 43(a) of the Lanham Act; (2) common law unfair competition; and (3) trademark dilution in violation N.Y. Gen. Bus. Law 360-*l*. On March 14, 2012, defendant filed a motion to dismiss the complaint with prejudice for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b). The court has fully considered the parties' arguments, and for the reasons set forth below, defendant's motion is granted.

1

## BACKGROUND

Louis Vuitton is one of the premier luxury fashion houses in the world, renowned for, among other things, its high-quality luggage, trunks, and handbags.  (Compl. ¶ 12.)  Louis Vuitton's principle trademark is the highly-distinctive and famous Toile Monogram.  (Id. at ¶ 14.)  Registered in 1932, this trademark, along with its component marks (collectively, the "LVM Marks"), are famous, distinctive, and incontestable.  (Id.); see Louis Vuitton Malletier, S.A. v. LY USA, No. 06-cv-13463 (AKH), 2008 WL 5637161, at *2 (S.D.N.Y. Oct. 3, 2008).

Louis Vuitton has invested millions of dollars and decades of time and effort to create a global recognition that causes consumers to associate the LVM Marks with high-quality, luxury goods emanating exclusively from Louis Vuitton (Id. at ¶¶ 18–20); see Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 112 (2d Cir. 2006) (describing Louis Vuitton's business model, trademarks, and marketing expenditures).

Warner Bros. is one of the oldest and most respected producers of motion pictures and television shows in the country and the world.  (Id. at ¶¶ 28–29.)  In the summer of 2011, Warner Bros. released "The Hangover: Part II" ("the Film"), the sequel to the 2009 hit bachelor-party-gone-awry-comedy "The Hangover."  The Film has grossed roughly $580 million globally as of the date of the Complaint, becoming the highest-gross R-rated comedy of all time and one of the highest grossing movies in 2011.  (Id. at ¶ 31.)

Diophy is a company that creates products which use a monogram design that is a knock-off of the famous Toile Monogram (the "Knock-Off Monogram Design").  (Id. at ¶ 24.)  The Diophy products bearing the Knock-Off Monogram Design have been extensively distributed throughout the United States, causing enormous harm to Louis Vuitton.  (Id. at ¶ 27.)  Despite the inferior quality of Diophy's products, demand for its products bearing the Knock-Off

2

Monogram Design remains high because they are far less expensive than genuine Louis Vuitton products.  (Id.)

## A.    The Airport Scene

As alleged in the complaint, in one early scene in the Film the "four main characters in Los Angeles International Airport before a flight to Thailand for the character Stu's bachelor party and wedding."  (Id. at ¶ 32.)  "[A]s the characters are walking through the airport, a porter is pushing on a dolly what appears to be Louis Vuitton trunks, some hard-sided luggage, and two Louis Vuitton Keepall travel bags."  (Id. at ¶ 33.)  Alan, one of the characters, is carrying what appears to be a matching over-the-shoulder Louis Vuitton "Keepall" bag, but it is actually an infringing Diophy bag.[1]  (Id.)  Moments later, Alan is seen sitting on a bench in the airport lounge and places his bag (i.e., the Diophy bag) on the empty seat next to him.  (Id. at ¶ 34.)  Stu, who is sitting in the chair to the other side of the bag, moves the bag so that Teddy, Stu's future brother-in-law, can sit down between him and Alan.  (Id.)  Alan reacts by saying: "Careful that is . . . that is a Lewis Vuitton."  (Id.)  No other reference to Louis Vuitton or the Diophy bag is made after this point.

After the movie was released in theaters, Louis Vuitton sent Warner Bros.' a cease and desist letter noting its objection to the use of the Diophy bag in the Film.  (Id. at ¶¶ 38–39).  Despite being informed of its objection, on December 6, 2011, Warner Bros. released the Film in the United States on DVD and Blu-Ray.  (Id. at ¶ 41.)  The complaint alleges that "many consumers believed the Diophy [b]ag" used in the Film "was, in fact, a genuine Louis Vuitton," and that Louis Vuitton consented to Warner Bros.' "misrepresentation" that the Diophy bag was a genuine Louis Vuitton product.  (Id. at ¶¶ 36, 45.)  Louis Vuitton claims that its harm has been

---

[1] Warner Bros. does not dispute for the purposes of this motion that Louis Vuitton's representations with respect to the source of the bag are accurate.

"exacerbated by the prominent use of the aforementioned scenes and the LVM Marks in commercials and advertisements for the [F]ilm," and that Alan's "Lewis Vuitton" line has "become an oft-repeated and hallmark quote from the movie."  (Id. at ¶ 44.)  Louis Vuitton attaches to the complaint, as Exhibit E, what it claims are "[r]epresentative Internet references and blog excerpts" demonstrating that consumers mistakenly believe that the Diophy bag is a genuine Louis Vuitton bag.  (Id. at ¶ 45.)[2]

## B.     The Present Motion

It is instructive to consider what this case is about and what it is not.  Louis Vuitton does not object to Warner Bros.' unauthorized use of the LVM Marks or reference to the name Louis Vuitton in the Film.  Nor does Louis Vuitton claim that Warner Bros. misled the public into believing that Louis Vuitton sponsored or was affiliated with the Film.  Rather, Louis Vuitton contends that Warner Bros. impermissibly used a third-party's bag that allegedly infringes on the LVM Marks.[3]  According to the complaint, "[b]y using the infringing Diophy [b]ag and affirmatively misrepresenting that it is a Louis Vuitton bag, the public is likely to be confused into believing that the Diophy [b]ag is an authentic Louis Vuitton product and that Louis Vuitton has sponsored and approved Warner Bros.' use and misrepresentation of the infringing Diophy [b]ag as a genuine product of Louis Vuitton in The Hangover: Part II."  (Compl. ¶ 35.)  The complaint further alleges that "Warner Bros.' use and misrepresentation of the Diophy [b]ag bearing the Knock-Off Monogram Design as an authentic Louis Vuitton bag is likely to blur the

---

[2] Although the Court takes as true the allegations of the complaint, none of the Internet references and blog excerpts attached to the complaint in Exhibit E show that anyone is confused or mistaken into believing that the Diophy bag was a real Louis Vuitton bag.  In one blog post, a commenter notes that the luggage on the cart is real, but the bag carried by Alan is a "replica."  Although a few other posts and comments refer to the bags generally as Louis Vuitton bags, no one else specifically writes about Alan's bag, let alone its authenticity.

[3] Warner Bros. refers to this bag a prop bag throughout its moving papers, and I see no reason why this characterization is not apt.

distinctiveness of the LVM Marks" and "tarnish the LVM Marks by associating Louis Vuitton with the poor quality and shoddy reputation of the cheap products bearing the Knock-Off Monogram Design."  (Id. at ¶¶ 46–47.)  On the basis of Warner Bros.' use of the allegedly infringing Diophy bag in the Film, Louis Vuitton asserts three causes of action: (1) false designation of origin/unfair competition in violation of 15 U.S.C. § 1125(a), (2) common law unfair competition,[4] and (3) trademark dilution in violation of New York General Business Law § 360-l.  (Id. at ¶¶ 50–69.)

Warner Bros. now moves to dismiss the complaint in its entirety on the ground that its use of the Diophy bag in the Film is protected by the First Amendment under the framework established by Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989).[5]

## DISCUSSION

### A.    Legal Standard

When deciding a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts alleged in the complaint that "plausibly give rise to an entitlement for relief."  Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[4] The standards for § 43(a) claims of the Lanham Act and common law unfair competition claims "are almost indistinguishable."  Tri-Star Pictures, Inc. v. Unger, 14 F. Supp. 2d 339, 363 (S.D.N.Y. 1998); Louis Vuitton Malletier v. Donkey & Bourke, Inc., 561 F. Supp. 2d 368, 381 (S.D.N.Y. 2008) (noting that the elements of unfair competition "mirror" the Lanham Act, except that plaintiffs must additionally show bad faith on the state law claim).

[5] In the alternative, Warner Bros. contends that dismissal of these claims is mandated by basic principles of trademark law: specifically, that Louis Vuitton fails to allege confusion related to consumer purchasing decisions; that Warner Bros. has not engaged in any actionable "trademark use" of Louis Vuitton's mark; and the accused use of Louis Vuitton's marks is legally de minimis.  (Memorandum of Law in Support of Motion to Dismiss ("Mot.") at 3.)  Because the Court agrees that the use of the Diophy bag is protected by the First Amendment, and this ruling disposes of the state-law claims premised on the same conduct, the Court need not address these arguments.

liable for the misconduct alleged."  Id. at 678.  If the non-moving party has "not nudged [its]

claims across the line from conceivable to plausible, [its] complaint must be dismissed."  Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice" to withstand a motion to dismiss.  Iqbal, 556 U.S. at 678 (citing

Twombly, 550 U.S. at 555).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6),

a district court may consider the facts alleged in the complaint, documents attached to the

complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v.

MSNBC Cable LLC, 662 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc.,

282 F.3d 147, 153 (2d Cir. 2002)).  However, the court may also consider a document that is not

incorporated by reference, "where the complaint 'relies heavily upon its terms and effect,'

thereby rendering the document 'integral' to the complaint."  Id. (quoting Mangiafico v.

Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).[6]

## B.    Lanham Act claim

To state a claim for trademark infringement under the Lanham Act, in addition to

showing that it has a valid mark, the plaintiff must show that the defendant's use of its mark is

likely to cause "an appreciable number of ordinarily prudent purchasers" "confusion as to the

origin, sponsorship, or approval" of the defendant's product.[7]  Savin Corp. v. Savin Group, 391

F.3d 439, 456 (2d Cir. 2004) (quotation omitted); 15 U.S.C. § 1125(a)(1)(A).  Courts look to the

---

[6] A DVD copy of the Film is attached to the Declaration of Giani P. Servodidio, dated March 14, 2012 ("Servodidio Decl."), as Exhibit A.  As the Film is referred to in the complaint and is integral to Louis Vuitton's claims, it is deemed incorporated into the complaint by reference.  Therefore, I consider it on this motion to dismiss.  See Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir.2004).

[7] There is no dispute in this case that Louis Vuitton has a valid mark.

eight factor test first articulated in <u>Polaroid Corp. v. Polaroid Elecs. Corp.</u>, 287 F.2d 492, 495 (2d Cir. 1961), to determine whether there is a likelihood of confusion.[8]  When applying these factors, courts should focus "on the ultimate question of whether consumers are likely to be confused."  <u>Charles Atlas, Ltd. v. DC Comics, Inc.</u>, 112 F. Supp. 2d 330, 339 (S.D.N.Y. 2000) (quoting <u>Nabisco, Inc. v. Warner-Lambert Co.</u>, 220 F.3d 43, 45–46 (2d Cir. 2000)).

1.    <u>First Amendment</u>

In <u>Rogers v. Grimaldi</u>, the Second Circuit held that the Lanham Act is inapplicable to "artistic works" as long as the defendant's use of the mark is (1) "artistically relevant" to the work and (2) not "explicitly misleading" as to the source or content of the work.[9]  875 F.2d at 999; <u>Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.</u>, 996 F.2d 1366, 1379 (2d Cir. 1993).  Louis Vuitton does not dispute that Warner Bros.' challenged use of the mark is noncommercial, placing it firmly within the purview of an "artistic work" under <u>Rogers</u>.  <u>See</u> <u>Joseph Burstyn, Inc. v. Wilson</u>, 343 U.S. 495, 502, 72 S.Ct. 777 (1952) (holding that motion pictures are protected speech); <u>see also</u> <u>United States v. United Foods, Inc.</u>, 533 U.S. 405, 409, 121 S.Ct. 2334 (2001) (defining "commercial speech" as "speech that does no more than propose a commercial transaction").

Louis Vuitton objects to the present motion on the following grounds: (1) whether the use was "artistically relevant" is an issue of fact that requires discovery; (2) the "explicitly

---

[8] The <u>Polaroid</u> factors are: (1) the strength of the senior mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will "bridge the gap"; (5) actual confusion; (6) the defendant's good faith (or bad faith) in adopting its own mark; (7) the quality of defendant's product; and (8) the sophistication of the buyers.  <u>Polaroid</u>, 287 F.2d at 495.

[9] The court in <u>Rogers</u> applied this test to the use of a trademark in a movie title, but courts have extended it to the content of expressive works as well. <u>Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Group, Inc.</u>, 886 F.2d 490, 495 (2d Cir. 1989) ("[T]he <u>Rogers</u> balancing approach is generally applicable to Lanham claims against works of artistic expression."); <u>see also</u> <u>E.S.S. Entm't 2000, Inc. v. Rock Star Videos Inc.</u>, 547 F.3d 1095, 1099 (9th Cir. 2008) ("Rock Star Videos") ("[T]here is no principled reason why [the <u>Rogers</u> test] ought not also apply to the use of a trademark in the body of the work.") (citing <u>Mattel, Inc. v. Walking Mountain Prods.</u>, 353 F.3d 792, 809 n. 17 (9th Cir. 2003)).  The parties do not dispute the application of <u>Rogers</u> to the content of a movie.

misleading" prong is not limited to confusion as to the source or content of the defendant's work; (3) Warner Bros. is not afforded First Amendment protection for using an infringing product; and (4) disposing this case on a motion to dismiss is otherwise inappropriate.

*a. Artistic Relevance*

The threshold for "artistic relevance" is purposely low and will be satisfied unless the use "has <u>no</u> artistic relevance to the underlying work <u>whatsoever</u>."  <u>Rogers</u>, 875 F.2d at 999 (emphasis added); <u>see also</u> <u>Rock Star Videos Inc.</u>, 547 F.3d at 1100 (holding that, under <u>Rogers</u>, "the level of relevance merely must be above zero"); <u>Dillinger, LLC v. Elec. Arts Inc.</u>, No. 09-cv-1236 (JMS) (DKL), 2011 WL 2457678, at *6 (S.D. Ind. June 16, 2011) ("[I]t is not the role of the Court to determine how meaningful the relationship between a trademark and the content of a literary work must be; consistent with <u>Rogers</u>, any connection whatsoever is enough.").  The artistic relevance prong ensures that the defendant intended an artistic—i.e., noncommercial—association with the plaintiff's mark, as opposed to one in which the defendant intends to associate with the mark to exploit the mark's popularity and good will.  <u>See Rogers</u>, 875 F.2d at 1001 (finding that the defendant satisfied the artistic relevance prong where its use of the trademark was "not arbitrarily chosen just to exploit the publicity value of [the plaintiffs' mark] but instead ha[d] genuine relevance to the film's story").

Warner Bros.' use of the Diophy bag meets this low threshold.  Alan's terse remark to Teddy to "[be] [c]areful" because his bag "is a Lewis Vuitton" comes across as snobbish only because the public signifies Louis Vuitton—to which the Diophy bag looks confusingly similar—with luxury and a high society lifestyle.  (<u>See</u> Compl. ¶ 20.)  His remark also comes across as funny because he mispronounces the French "Louis" like the English "Lewis," and ironic because he cannot correctly pronounce the brand name of one of his expensive

possessions, adding to the image of Alan as a socially inept and comically misinformed character.[10]  This scene also introduces the comedic tension between Alan and Teddy that appears throughout the Film.

Louis Vuitton contends that the Court cannot determine that the use of the Diophy bag was artistically relevant until after discovery.  Specifically, Louis Vuitton maintains that it should be able to review the script and depose the Film's creators to determine whether Warner Bros. intended to use an authentic Louis Vuitton bag or Diophy's knock-off bag.  (Memorandum of Louis Vuitton Malletier, S.A. in Opposition to Warner Bros.' Motion to Dismiss ("Opp.") at 11.)  However, the significance of the airport scene relies on Alan's bag—authentic or not—looking like a Louis Vuitton bag.  Louis Vuitton does not dispute this was Warner Bros.' intention, and therefore the discovery it seeks is irrelevant.  The Court is satisfied that Warner Bros.' use of the Diophy bag (whether intentional or inadvertent) was intended to create an artistic association with Louis Vuitton, and there is no indication that its use was commercially motivated.  See Rogers, 875 F.2d at 1001.[11]

---

[10] For example, while at the wedding rehearsal dinner in Thailand, Alan unexpectedly decides to give a toast to Stu, ostensibly to restore his buddy's good image after the bride's father relentlessly mocked Stu in front of all the guests by likening him to, among other things, "soft white rice in lukewarm water."  In a complete non sequitur, Alan begins his toast by offering a few "fun facts" about the population and chief exports of Thailand, which he naturally pronounces as "Thigh-land."

[11] For this reason, the present case is distinguishable from the cases cited by Louis Vuitton.  In those cases, the court disbelieved the defendant's claim that a communicative message was intended and/or expressed concern that the mark's use was commercially motivated.  See Am. Dairy Queen Corp. v. New Line Prods., Inc., 35 F. Supp. 2d 727, 734 (D. Minn. 1998) (defendant movie producers' position was that their proposed movie title was not "designed to evoke or even suggest any relationship at all to [plaintiff's] trademarked name or any of its products"); Sherwood 48 Assocs. v. Sony Corp. of Am., 76 Fed. Appx. 389, 392 (2d Cir. 2003) (plaintiffs alleged that the defendant altered the plaintiffs' marks "to generate revenue for their film," and the defendant had not pled that the alteration had "at least some artistic relevance in order to assert a valid First Amendment defense"); Parks v. LaFace Records, 329 F.3d 437, 453 (6th Cir. 2003) (finding that "reasonable persons could conclude that there is no relationship of any kind between Rosa Park's name and the content of the song," and noting that the "marketing power" of the song's title "unquestionably enhanced the song's potential sale to the consuming public").

Accordingly, the Court concludes that the use of the Diophy bag has some artistic relevance to the plot of the Film.[12]

*b. Explicitly Misleading*

Since using the Diophy bag has some relevance to the Film, Warner Bros.' use of it is unprotected only if it "explicitly misleads as to the source or the content of the work." Rogers, 875 F.2d at 999. The Second Circuit has explained that the relevant question is whether the defendant's use of the mark "is misleading in the sense that it induces members of the public to believe [the work] was prepared or otherwise authorized" by the plaintiff. Twin Peaks, 996 F.2d at 1379. The explicitly misleading determination "must be made, in the first instance, by application of the venerable Polaroid [likelihood of confusion] factors." Id. (citing Cliffs Notes, 886 F.3d at 495 n. 3). Only a "particularly compelling" finding of likelihood of confusion can overcome the First Amendment interests. Id.

Rogers and the cases adopting its holding have consistently framed the applicable standard in terms of confusion as to the defendant's artistic work. See Rogers, 875 F.2d at 1001 ("The title 'Ginger and Fred' contains no explicit indication that Rogers endorsed the [defendant's] film or had a role in producing it.") (emphasis added); see also, e.g., Walking Mountain, 353 F.3d at 807 ("The photograph titles do not explicitly mislead as to [plaintiff] Mattel's sponsorship of [defendant's] works.") (emphasis added); Parks, 329 F.3d at 459 ("[T]he title "Rosa Parks" makes no explicit statement that the [defendant's] work is about that person in any direct sense.") (emphasis added); Westchester Media v. PRL USA Holdings, Inc., 214 F.3d

_____

[12] Louis Vuitton cites three cases for the proposition that artistic relevance cannot be decided on a motion to dismiss, none of which actually hold this. (Opp. at 9.) In Burck v. Mars, Inc., the court addressed whether the defendant's use of the mark was a parody and entitled to the Rogers protection as an artistic work, not whether defendant had met the relevance prong. 571 F. Supp. 2d 446, 456–57 (S.D.N.Y. 2008). In DeClemente v. Columbia Pictures Indus., Inc., the court expressly stated that that the parties did not dispute that the film title had "considerable artistic relevance," and so the court did not address that issue. 860 F. Supp. 30, 51 (E.D.N.Y. 1994). In Groden v. Random House, Inc., the court noted that ruling for the plaintiff would raise free speech issues, but it too did not at all address the artistic relevance prong. 61 F.3d 1045, 1052 (2d Cir. 1995).

658, 668 (5th Cir. 2000) (finding that consumers could plausibly believe "that [defendant's magazine] is associated with [plaintiff's goods]") (emphasis added); Twin Peaks, 996 F.2d at 1379 ("The question then is whether the title is misleading in the sense that it induces members of the public to believe [defendant's] Book was prepared or otherwise authorized by [the plaintiff].") (emphasis added); Cliffs Notes, 866 F.2d at 495 ("[W]e do not believe that there is a likelihood that an ordinarily prudent purchaser would think that [defendant's book] is actually a study guide produced by appellee.") (emphasis added); Dillinger, 2011 WL 2457678, at *6 (stating the legal issue as whether "[plaintiff's] label [is] explicitly misleading as to the source and content of the [defendant's] games") (emphasis added).

It is not a coincidence that courts frame the confusion in relation to the defendant's artistic work, and not to someone else's.  This narrow construction of the Lanham Act accommodates the public's interest in free expression by restricting its application to those situations that present the greatest risk of consumer confusion: namely, when trademarks are used to "dupe[] consumers into buying a product they mistakenly believe is sponsored by the trademark owner."  Rock Star Videos, 547 F.3d at 1100 (quoting Walking Mountain, 353 F.3d at 806).  When this concern is present it will generally outweigh the public's interest in free expression.  See Rogers, 875 F.2d at 1000 ("If such explicit references [signifying endorsement] were used in a title and were false as applied to the underlying work, the consumer's interest in avoiding deception would warrant application of the Lanham Act, even if the title had some artistic relevance to the work.").  However, if a trademark is not used, "in any direct sense," to designate the source or sponsorship of the defendant's work, then "the consumer interest in avoiding deception is too slight to warrant application of the Lanham Act."  Syler v. Woodruff, 610 F. Supp. 2d 256, 266 (S.D.N.Y. 2009) (quoting Rogers, 875 F.2d at 1000); see also 4

McCarthy on Trademarks and Unfair Competition § 23:11.50 (4th ed.) ("[I]f the defendant does not use the accused designation as defendant's own identifying trademark, then confusion will usually be unlikely.  Then there are not the requisite two similar marks confusing the viewer into believing that the two marks identify a single source.").

Louis Vuitton contends that the explicitly misleading prong is not limited to confusion as to the source or content of the Film, but rather, extends to confusion as to the source or content of a third-party's goods.  (Opp. at 12.)  Curiously, Louis Vuitton makes this argument without addressing the clear rule set forth in Twin Peaks and instead relies on Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604 F.2d 200, 205 (2d Cir. 1979), a decision whose First Amendment approach Rogers expressly declined to follow and which has been criticized by other courts.  Rogers, 875 F.2d at 999 n. 4; see Parks, 329 F.3d at 449–50 (discussing the problems that Rogers and other courts have found with the Dallas Cowboys Cheerleaders approach to First Amendment issues).  Notwithstanding the inapplicability of Dallas Cowboys Cheerleaders to noncommercial speech, like the speech at issue here, that case does not stand for the proposition Louis Vuitton claims it does.

In Dallas Cowboys Cheerleaders, the Second Circuit affirmed a preliminary injunction barring the defendants from exhibiting or distributing a pornographic film that depicted the plaintiff's trademarked cheerleader uniforms.  604 F.2d 200.  There, the court rejected the defendants' argument that the Lanham Act only prevents confusion as to the origin of the film, and ruled that the Act also prevents confusion that "the mark's owner sponsored or otherwise approved the use of the trademark."  Id. at 205.  Although Louis Vuitton latches onto the "approved the use of the trademark" language, when read in the context of the decision it is clear that the court was referring to confusion that the mark's owner sponsored or approved of the

film, for this was the precise type of confusion the court found actionable: "Plaintiff expects to establish on trial that the public may associate it with defendants' movie and be confused into believing that plaintiff sponsored the movie, provided some of the actors, licensed defendants to use the uniform, or was in some other way connected with the production." Id.[13]

The other cases Louis Vuitton cites in support of this position are similarly misplaced, because those cases merely cite to the same legal principle that Dallas Cowboys Cheerleaders stands for: namely, that the Lanham Act recognizes confusion as to the sponsorship of the defendant's product (in addition to confusion as to the source of it). See Famous Horse Inc. v. 5th Avenue Photo Inc., 624 F.3d 106, 109 (2d Cir. 2010) (finding that the complaint adequately alleged confusion where the defendant implied that plaintiff "was a satisfied customer" of the defendant's goods and services); Pirone v. MacMillian, 894 F.2d 579, 585 (2d Cir. 1990) (agreeing with the district court that plaintiff "cannot possibly show confusion as to source or sponsorship of the [defendant's] calendar") (internal quotation marks omitted). Additionally, neither of these cases dealt with noncommercial speech.[14]

Here, the complaint alleges two distinct theories of confusion: (1) that consumers will be confused into believing that the Diophy bag is really a genuine Louis Vuitton bag; and (2) that Louis Vuitton approved the use of the Diophy bag in the Film. However, even drawing all

---

[13] Other courts in this circuit discussing Dallas Cowboys Cheerleaders have interpreted it this way as well. See, e.g., Courtenay Commc'ns Corp. v. Hall, 334 F.3d 210, 213 n.1 (2d Cir. 2003) (quoting the same language above in finding merit with plaintiff's allegation that defendant used the plaintiff's mark to claim that plaintiff had endorsed defendant's marketing website); Hormel Foods Corp. v. Jim Henson Prods., Inc., 73 F.3d 497, 502 (2d Cir. 1996) (citing Dallas Cowboys Cheerleaders for the proposition that plaintiff's trademark is protected against "confusion as to plaintiff's sponsorship or endorsement of the [defendant's] junior mark").

[14] Louis Vuitton's claim that Rogers itself also supports its argument because the court there referred to "source" and "content" confusion is puzzling. (Opp. at 13.) The source/content dichotomy refers to confusion about the source of the work or confusion about the content of the work. See Rogers, 875 F.2d at 1001 ("[Plaintiff] claims there is a likelihood of confusion that (1) Rogers produced, endorsed, sponsored, or approved the film, and/or (2) the film is about Rogers and Astaire . . . .") (emphasis added). Hence, Rogers supports Warner Bros.' position that the confusion (of source or content) refers to the defendant's film.

reasonable inferences in the light most favorable to Louis Vuitton, as the Court is required to do, neither of these allegations involves confusion as to Warner Bros.' artistic work.  Specifically, Louis Vuitton does not allege that Warner Bros. used the Diophy bag in order to mislead consumers into believing that Louis Vuitton produced or endorsed the Film.  Therefore, the complaint fails to even allege the type of confusion that could potentially overcome the Rogers protection.

Even if the Court assumes, arguendo, that Louis Vuitton has stated a cognizable claim of confusion, its claim would fail anyway.  The Second Circuit in Rogers emphasized that when First Amendment values are involved, courts should narrowly construe the Lanham Act and "weigh the public interest in free expression against the public interest in avoiding customer confusion."  Cliff Notes, 886 F.2d at 494 (citing Rogers, 875 F.2d at 989–99); see also Univ. of Alabama Bd. of Trustees v. New Life Art, Inc., --- F.3d ---, No. 09-cv-16412, 2012 WL 2076691, at *7 (11th Cir. June 11, 2012); Rock Star Videos, 547 F.3d at 1099.  As such, where an expressive work is alleged to infringe a trademark, "the likelihood of confusion must be particularly compelling."  Twin Peaks, 996 F.2d at 1379 (emphasis added); see also Westchester Media, 214 F.3d at 665.

The Court concludes that Louis Vuitton's allegations of confusion are not plausible, let alone "particularly compelling."  First, it is highly unlikely that an appreciable number of people watching the Film would even notice that Alan's bag is a knock-off.  Cf. Gottlieb Dev. LLC v. Paramount Pictures Corp., 590 F. Supp. 2d 625, 634–35 (S.D.N.Y. 2008) (Chin, J.) (no confusion of plaintiff sponsoring defendant's film where "it would be difficult for even a keen observer to pick out [plaintiff's] trademark" since "it appears in the background of the scene" and "occupies only a minute fraction [of] the frame for three segments lasting approximately

14

three seconds each").  In this regard, Louis Vuitton is trying to have it both ways: arguing that the Diophy bags are so similar as to create consumer confusion but at the same time so obviously dissimilar that someone watching the Film would notice the slightly different symbols used on the Diophy bag.  Yet, the Diophy bag appears on screen for no more than a few seconds at a time and for less than thirty seconds in total, and when it is on screen, it is usually in the background, out of focus, or partially obscured by other things.  Like the appearance of the plaintiff's mark in Gottlieb, the Court finds that the difference between the authentic and knock-off bag is so difficult to even notice, that a claim of confusion under the Lanham Act "is simply not plausible."  Gottlieb, 590 F. Supp. 2d at 635.  Furthermore, Louis Vuitton's position assumes that viewers of the Film would take seriously enough Alan's statements about designer handbags (even about those he does not correctly pronounce) that they would attribute his views to the company that produced the Film.[15]  This assumption is hardly conceivable, and it does not cross the line into the realm of plausibility.  See Twombly, 550 U.S. at 570.  Lastly, Louis Vuitton is objecting to a statement made by a fictional character in a fictional movie, which it characterizes as an affirmative misrepresentation.  However, this assumes that the fictional Alan character knew that his bag was a knock-off; otherwise, he would simply be (innocently) misinformed about the origin of his bag.  For these reasons, the Court concludes that the likelihood of confusion is at best minimal, and when balanced against the First Amendment concerns implicated here, it is not nearly significant enough to be considered "particularly compelling." See Twin Peaks, 996 F.2d at 1379.

---

[15] Moreover, Louis Vuitton does not cite to any legal authority for the proposition that a reference to a trademark made by "a fictional character in a creative work constitutes a legal representation of origin by the creators of the work."  (Mot. at 3.)

15

Under the expansive view Louis Vuitton advances, Warner Bros. would be liable—not for identifying its own product with the LVM Marks—but for identifying the Diophy bag with the LVM Marks or, alternatively, for implying that Louis Vuitton approved the use of the Diophy bag in the Film.  The public's interest in avoiding consumer confusion (assuming the Lanham Act covers this type of confusion) is not so great as to overcome the significant threats to free expression from holding Warner Bros. liable for its noncommercial speech in this case.  This is especially true since the relevant confusion is caused by a third-party—one with whom Warner Bros. has no relationship whatsoever.[16]  Any confusion created by Warner Bros. is at most indirect and thus "too slight to warrant application of the Lanham Act."  See Syler, 610 F. Supp. 2d at 266 (quoting Rogers, 875 F.2d at 1000).[17]

Louis Vuitton maintains that the Rogers test cannot be assessed on a motion to dismiss. (Opp. at 14–18.)  The Court disagrees.  Although many courts have considered the Rogers test on a summary judgment motion, not on a motion to dismiss, the circuit has never stated that a

---

[16] The notion that a defendant must have a connection to the sale of the confusingly similar goods in order to be held liable under the Lanham Act is reflected in the doctrine of contributory trademark infringement, which requires that the defendant "intentionally induces another to infringe a trademark," or "continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement."  Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 104 (2d Cir. 2010) (quoting Inwood Labs. v. Ives Labs., 456 U.S. 844 (1982)).  The Court is not aware of any case in which this doctrine has been applied to noncommercial speech, and Louis Vuitton does not claim it applies here.

[17] This limitation on the reach of the Lanham Act is consistent with the text of § 43(a)(1)(A), which expressly requires the "confusion," "mistake," or "dece[ption]" to be "of [the defendant's] goods, services, or commercial activities," and with the core concern of trademark law, which is confusion related to purchasing decisions and not confusion generally.  See Lang v. Ret. Living Pub. Co., Inc., 949 F.2d 576, 582-83 (2d Cir. 1991); see also Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 32–33, 123 S.Ct. 2041 (2003) ("The words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers."). That is why the Act generally applies in a commercial context to "a seller [who seeks] to pass of his goods as the goods of another," and not to a defendant who has no connection to the sale of the confusingly similar goods—especially one engaged in expressive speech.  Lang, 949 F.2d at 582–83; see also 1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 406–07 (2d Cir. 2005) (holding that a trademark infringement claim pursuant to 15 U.S.C. § 1114 or § 1125(a)(1) requires a plaintiff to establish, inter alia, "that the defendant used the mark . . . in connection with the sale or advertising of goods or services.") (emphasis added) (internal citations, ellipses, and quotation marks omitted); Bosely Medical Institute, Inc. v. Kremer, 403 F.3d 672, 676 (9th Cir. 2005) ("Infringement claims are subject to a commercial use requirement.").

court cannot properly apply the Rogers test (or the likelihood of confusion factors) on a motion
to dismiss.  In fact, the Second Circuit has suggested that it would be appropriate "where the
court is satisfied that the products or marks are so dissimilar that no question of fact is
presented." Pirone, 894 F.2d at 584 (affirming grant of summary judgment); cf. Peter F. Gaito
Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010) (holding that no
discovery or fact-finding is necessary to consider whether works are "substantially similar"
under copyright law where all that is required is a visual comparison of the works).  In the
context of a motion to dismiss, courts have disposed of trademark claims where simply looking
at the work itself, and the context in which it appears, demonstrates how implausible it is that a
viewer will be confused into believing that the plaintiff endorsed the defendant's work (and
without relying on the likelihood of confusion factors to do so).[18]  See, e.g., Stewart Surfboards,
Inc. v. Disney Book Group, LLC, No. 10-cv-2982, slip. op. (C.D. Cal. May 11, 2011) (no
likelihood of confusion that readers would believe that plaintiff surfboard manufacturer endorsed
a Hannah Montana book because one of its surfboards appeared on the back cover); Gottlieb,
590 F. Supp. 2d at 630 (no likelihood of confusion that viewers would believe plaintiff pinball
machine owner endorsed the movie "What Women Want" because it appeared in the background
of a few scenes); Burnett v. Twentieth Century Fox Film Corp., 491 F. Supp. 2d 962, 973 (C.D.
Cal. 2007) (no likelihood of confusion that viewers would believe plaintiff Carol Burnett
endorsed a Family Guy sketch making fun of her); cf. Wham-O, Inc. v. Paramount Pictures
Corp., 286 F. Supp. 2d 1254 (N.D. Cal. 2003) (denying preliminary injunction without discovery
where no likelihood of confusion that viewers would believe that plaintiff maker of the Slip 'N

---

[18] See generally Cliffs Notes, 886 F.2d at 495 n. 3 (noting the "awkward" fit of the Polaroid test in the context of
noncommercial speech).

Slide endorsed the movie "Dickie Roberts: Former Child Star" because the protagonist (mis)used the toy water slide in one scene of the movie).

Here, there is no likelihood of confusion that viewers would believe that the Diophy bag is a real Louis Vuitton bag just because a fictional character made this claim in the context of a fictional movie. Neither is there a likelihood of confusion that this statement would cause viewers to believe that Louis Vuitton approved of Warner Bros.' use of the Diophy bag. In a case such as this one, no amount of discovery will tilt the scales in favor of the mark holder at the expense of the public's right to free expression.[19]

Therefore, even assuming, arguendo, that Louis Vuitton could state a cognizable claim of confusion, Warner Bros.' use of the Diophy bag is protected under Rogers because it has some artistic relevance to the Film and is not explicitly misleading.[20]

## C.  State Law Claims

Louis Vuitton's pendant state law claim under New York's anti-dilution statute and its common law claim of unfair competition are likewise dismissed because they are based on the same permissible conduct as its Lanham Act claim. See Charles Atlas, Ltd. v. DC Comics, Inc.,

---

[19] Even if Louis Vuitton did allege confusion as to the Film, applying the Polaroid factors demonstrates just how unlikely is the possibility of sponsorship confusion between the Film and Louis Vuitton. Factors (2), (3), (4), (6), and (8) all strongly come out in favor of Warner Bros., while factors (1) and (6) do not really apply. The marks and products are entirely dissimilar; Louis Vuitton and Warner Bros. are in different industries and not in competition with each other; there is little chance that Louis Vuitton will "bridge the gap" to movie production; there is no claim that Warner Bros. knowingly used a knock-off when filming the movie; and moviegoers are sophisticated enough to know that the mere presence of a brand name in a film, especially one that is briefly and intermittently shown, does not indicate that the brand sponsored the movie, see Modular Cinemas of Am., Inc. v. Mini Cinemas Corp., 348 F. Supp. 578, 583 (S.D.N.Y. 1972), and consumers of handbags are sophisticated enough to know the difference between a real bag and a knock-off. Malletier v. Dooney & Bourke, Inc., 561 F.Supp.2d 368, 389 (S.D.N.Y. 2008). Even assuming that factor (5), actual confusion, favors Louis Vuitton, Rogers teaches that mark owner's must accept "some" confusion when outweighed by free speech interests. 875 F.2d at 1001; see also New Life Art, Inc., 2012 WL 2076691, at *9.

[20] The Court has considered Louis Vuitton's argument that Warner Bros. is not afforded First Amendment protection for using an infringing product and finds it to be without merit.

112 F. Supp. 2d 330, 341 (S.D.N.Y. 2000); Yankee Publ'g Inc. v. News America Publ'g Inc.,

809 F. Supp. 267, 282 (S.D.N.Y. 1992) ("[T]he same First Amendment considerations that limit

a cause of action under the Lanham Act apply also to a cause of action under New York law.");

cf. L.L. Bean, Inc. v. Drake Publishers, Inc., 811 F.2d 26, 32 (1st Cir. 1987) ("It offends the

Constitution . . . to invoke the [Maine] anti-dilution statute as a basis for enjoining the

noncommercial use of a trademark by a defendant engaged in a protected form of expression.").

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss the complaint is granted.

SO ORDERED.

Dated:     New York, New York
           June 15, 2012

ANDREW L. CARTER, JR.
United States District Judge

19



